Baker *v.* Roslyn Swim Club, Appellant.

Argued June 18, 1965. Before ERVIN, P. J., WRIGHT, FLOOD, JACOBS, and HOFFMAN, JJ. (WATKINS and MONTGOMERY, JJ., absent).

*William H. Mitman,* for appellant.

*James E. O'Neill, Jr.,* with him *Rogers & O'Neill,* for appellee.

OPINION BY ERVIN, P. J., September 16, 1965:

This is an action in ejectment between adjoining landowners to determine their mutual property line. By agreement of the parties it was tried by the court below without a jury, pursuant to the provisions of the Act of 1874, P. L. 109, as amended, 12 PS §688. The parties filed a written waiver of specific findings of fact and conclusions of law and agreed that a general verdict might be entered. The case was tried before GAWTHROP, P. J., who subsequently filed a decision, designated "Verdict," in favor of the defendant. Four days later the plaintiff's counsel filed a motion for new trial and a motion for judgment n.o.v. The court below pointed out that the Act of 1874 does not provide for such motions, but rather provides for exceptions to the findings of fact and conclusions of law. However, the court below, following the procedure in *Miller v. Werner,* 61 Montg. 73, treated the reasons assigned in the motion for new trial as being exceptions to findings of fact, and the motion for judgment n.o.v. as an exception to the conclusion of law. Since the court below handled the matter in that fashion without objection by either party, we shall do likewise, but our action in

so doing must not be regarded as a precedent in future cases. The Act of 1874 is explicit in setting forth the procedure and it should be followed.

After argument on the motions as filed by the plaintiff, the court below, in an opinion by GAWTHROP, P. J., reversed the decision of the trial judge and entered its decision in favor of the plaintiff. The defendant has appealed to this Court.

The plaintiff and defendant own adjoining tracts of land in a development called "Roslyn," West Goshen Township, Chester County, Pennsylvania. Both tracts are in an A Residence District under the local zoning ordinance and both are part of a considerably larger tract which was conveyed by Edward T. Biddle to Lewis S. Hickman, Jr. on November 15, 1943. On January 12, 1946, Lewis S. Hickman et ux. conveyed a substantial portion of the tract to William Drayman. Although the descriptions in the two deeds begin at different points and do not cover exactly the same property, nevertheless the boundary lines involved in the particular case are identical in both deeds.

In the Biddle deed, there is mention of a certain stone which is a corner of land belonging to the William Wells Estate. The description then follows "thence by the Wells Estate south seventy-nine degrees nineteen minutes west, two hundred fifty-two and four tenths (252.4) feet to a stone a corner of land belonging to Joseph W. Passmore; then by the Passmore land, the same course continued for an additional distance of two hundred thirty-seven and twenty-nine hundredths (237.29) feet to an iron pin set in a line of land belonging to Charles Murtagh; thence by the Murtagh land north twenty-six degrees fifty-nine minutes west, five hundred and eighty-two (582.0) feet to a stone a corner of land belonging to the John H. Darlington Estate; . . . ."

The description in the Hickman deed from the same stone monument reads as follows: "thence South seventy-nine (79) degrees nineteen (19) minutes West four hundred eighty-nine and sixty-nine hundredths (489.69) feet to an iron pin, a corner of now or late Charles Murtagh; thence along same North twenty-six (26) degrees fifty-nine (59) minutes West five hundred eighty-two (582) feet to a stone monument, a corner of now or late John H. Darlington; . . . ."

On May 8, 1956 William Drayman and Pearl Drayman, his wife, conveyed to the defendant, the Roslyn Swim Club, a portion of the above tract, which was recited to be "known as Lot No. 117 on a plan of lots made by Damon & Foster, C. E., as last revised March 15, 1948, for William Drayman, and bounded and described as follows:

"BEGINNING at a point in the southerly side of Spruce Avenue as the same is laid out and opened in the development known as Roslyn, at a corner of Lot No. 116, thence by said Lot No. 116 south eleven (11) degrees twenty-seven (27) minutes east three hundred thirty-four and forty-eight one-hundredths (334.48) feet to a stone in the southernmost perimeter of land conveyed to William Drayman by Lewis S. Hickman, Jr. and Margaret D. Hickman, his wife, by deed dated January 12, 1946; thence south seventy-nine (79) degrees nineteen (19) minutes west two hundred twenty-five and sixteen one hundredths (225.16) feet to a stake in line of land now or late of Charles Murtaugh; thence by same north twenty-six (26) degrees, fifty-six (56) minutes ten (10) seconds west three hundred thirty and seventy-one hundredths (330.70) feet to a point in line of Lot No. 118; thence by same north sixty-three (63) degrees, forty-seven (47) minutes east two hundred thirty-eight and thirty-four one hundredths (238.34) feet to a point in the southwesterly side of Spruce Avenue aforesaid; thence along said

Spruce Avenue in a southeasterly direction curving toward the east on a curve having a radius of one hundred eighty (180) feet for an approximate arc distance of one hundred (100) feet to the point and place of beginning, be the contents what they may."

At that time the only *recorded* plan was the Damon & Foster plan as revised in 1948. Lots 116, 117 and 118 were not shown on the plan as recorded and the corner of Lot 116 was not definable on the ground. Actually the Damon & Foster plan had been revised on January 20, 1955 and approved by the township commissioners on January 4, 1956 but it had never been recorded. The lots in question were shown on the revised plan. When the defendant purchased its lot, one of its members, Walter S. McLaughlin, attempted to locate the eastern boundary, aided by Mr. Hoag, a neighbor. He found a stone. This was the stone referred to in the Biddle and Hickman deeds, which marked the boundary of the William Wells Estate, now owned by Hoag, and that of Joseph Passmore, another property now owned by the plaintiff's family. Using this stone as a starting point, he measured the proper angle to the street and thus established to his satisfaction the eastern line of the defendant's property. However, he did not attempt to establish the southern or western lines and only took a check on the 100 foot arc along the street.

On January 15, 1957 William Drayman and wife conveyed to William W. Johnson and wife two lots in the tract (actually Lots Nos. 116 and 115 but the deed does not identify them as such) beginning at a point on the southeasterly side of Spruce Avenue at the distance of 1240.64 feet from the center line of Wilmington Pike, containing a frontage of 200 feet on Spruce Avenue. This deed makes no reference to any monuments nor to any adjoining lots.

On July 21, 1962 William Johnson and wife conveyed to the plaintiff the westerly half of that property (actually Lot No. 116). Before the deed to the plaintiff was prepared, she had the property surveyed by John E. Houtman, a civil engineer and land surveyor, who prepared the description in her deed. Houtman used as his starting point a point on the southeasterly side of Spruce Avenue 1340.64 feet from the center line of Wilmington Pike and determined that the plaintiff's rear line did not stop at the Wells-Passmore stone but continued 12.16 feet beyond it. It is this strip, 12.16 feet wide, extending from the street to the rear of the properties, which is the area in dispute in this case.

The general rules to be applied in boundary cases were set forth in *Walleigh v. Emery,* 193 Pa. Superior Ct. 53, 58, 163 A. 2d 665, as follows: "Courses and distances in a deed must give way to monuments on the ground: Merlino v. Eannotti, 177 Pa. Superior Ct. 307, 110 A. 2d 783.

"Parol evidence is admissible to establish the existence of monuments: New York State Natural Gas Corp. v. Roeder, 384 Pa. 198, 120 A. 2d 170. Boundaries may be established by circumstantial as well as direct evidence: Hostetter v. Com., 367 Pa. 603, 80 A. 2d 719; Guerra v. Galatic, 185 Pa. Superior Ct. 385, 137 A. 2d 866.

"Where the location of the beginning corner of a survey is doubtful, the lines of the survey may be determined by commencing at some other natural or artificial object called for and identified: 11 C.J.S., Boundaries, §12.

"The question of what is a boundary line is a matter of law, but the question of where a boundary line, or a corner, is actually located is a question of fact: Guerra v. Galatic, supra."

In that case, however, it was only by considering the monument (a party wall) that all of the other

property lines could be determined. It was not necessary for this Court to consider or to refer to the recognized exceptions to the general rules where the use of the monument would lead to an absurd result.

The general rule for establishing the order of precedence between inconsistent calls in a deed is set forth in 12 Am. Jur. 2d Boundaries, §65, at page 603, as follows: "Where the calls for the location of boundaries to land are inconsistent, *other things being equal,* resort is to be had first to natural objects or landmarks, next to artificial monuments, then to adjacent boundaries (which are considered a sort of monument), and thereafter to courses and distances." However, the same paragraph continues with the following language: "Where, however, it is apparent that a mistake exists with respect to the calls, an inferior means of location may control a higher one. In the last analysis the call adopted as the controlling one should be that most consistent with the apparent intent of the grantor.

"Generally, among the inferior calls, course will control distance if they are inconsistent, and course and distance will control quantity." (Emphasis supplied)

Likewise, the same general rule and the same exceptions are cited in 11 C.J.S. Boundaries §51, as follows: "The rule that artificial monuments control courses and distances in case of conflict is not an imperative and exclusive one, but is a rule of construction to ascertain, or to aid in determining, the intention of the parties; and it is not followed where strict adherence to the call for a monument would lead to a construction plainly inconsistent with such intention.

"Accordingly, courses and distances will prevail over monuments where absurd consequences might ensue by giving controlling influence to a call for the latter, or where, in any given case, a consideration of all the facts and circumstances shows a call for dis-

tance to be the more reliable or certain, or where the call for the monument was inserted by mistake or inadvertence."

The Pennsylvania cases also recognize these exceptions. In *Brolaskey v. McClain,* 61 Pa. 146 (1869), the discrepancy was not between a monument and distance but was between an adjoiner and distance. The Court said, at page 163: "There is a manifest discrepancy of 79 feet between the distance and the adjoiner called for by the deeds, and, if there were no other circumstances in the case, the call for Springett's lot as an adjoiner or boundary would undoubtedly control the distance. Where the lines are not run and marked on the ground, and there are no other circumstances equally decisive and controlling, the calls for adjoiners or other fixed boundaries invariably govern the calls for courses and distances, when there is a discrepancy between them, for the reason that it is easier to be mistaken in a measurement than it is in a boundary: Mackentile v. Savoy, 17 S. & R. 104; Murphy v. Campbell, 4 Barr 485; Cox v. Couch, 8 Id. 147; Petts v. Gaw, 3 Harris 218; Mathers & Boynton v. Hegarty, 1 Wright 64; Speakman v. Forepaugh, 8 Id. 372. But the rule is equally well settled that the lines actually marked on the ground constitute the survey and control the distances, even where the draft of the survey or the description in the deed calls for natural or other fixed boundaries: Mageehan v. Adams, 2 Binn. 109; Walker v. Smith, 2 Barr 43; Thomas v. Mowrer, 3 Harris 139; Younkin v. Cowan, 10 Casey 200; Darrah & Carrier v. Bryant, 6 P. F. Smith 69." Again, on page 164, we find the following language: "Is it not, then, perfectly clear, from the concurrent and subsequent acts and declarations of the parties, that the deed to Poyntell was intended to convey only the 172 feet of which the grantee took possession, and that this was the understanding of both parties? And is it not equally clear

that the call for Herbert Springett's lots, as a western boundary, was a mistake? And if so, is the rule that a call for adjoiners controls the distance when there is a discrepancy, so inflexible that it cannot yield to the manifest intent of the parties, as evidence by their acts and declarations for a period of more than half a century? Are we compelled so to construe the deed as to defeat, or may we so construe it as to give effect to the intent of the parties? We think that, under the facts and circumstances of this case, the court erred in the rigid application of the rule, that calls for adjoiners control distances, . . . ."

Again, in *Post v. Wilkes-Barre Connecting R.R. Co.*, 286 Pa. 273, 133 A. 377, it was stated: "We fully recognize the general rule that monuments on the ground are of the highest value on questions of boundary; but that rule cannot prevail where the monument claimed is so manifestly wrong as to lead to an absurd result (Davis v. Rainsford, 17 Mass. 207; Heaton v. Hodges, 30 Am. Dec. (Me.) 731 and note 740; 4 R. C. L. 101, 102), as here, embracing the land of a third party. An alleged monument, which is a palpable mistake, will be disregarded: Brolasky v. McClain, 61 Pa. 146, 164. See also Malone et al. v. Sallada et al., 48 Pa. 419. Where the monuments are doubtful, a resort will be had to the courses, distances and quantity. See White et al. v. Luning, 93 U.S. 514; Robinson v. Doss, 53 Texas 496; Western Mining, etc., Co. v. Peytona Cannel Coal Co., 8 W. Va. 406."

In *Dallas Borough Annexation Case*, 169 Pa. Superior Ct. 129, 82 A. 2d 676, after quoting the foregoing language in *Post v. Wilkes-Barre Connecting R.R. Co.*, supra, Judge DITHRICH approved the following language of President Judge McCONNELL of Westmoreland County, in the case of *Fisher v. Pittsburgh Coal Co.*, 29 Dist. 885, 891: "Though some of the terms of description . . . are entitled usually to more probative

value than others, yet, in the end, the true construction is ascertainable by the totality of their combined effect and not wholly and exclusively by any one term when it is irreconcilable with the other terms of description. To lay down the hard and fast rule that only monuments . . . are determinative elements of a description . . . is to make the rule contended for more important than the underlying intent of the contracting parties. . . ." We again approve that language.

In *Howarth v. Miller,* 382 Pa. 419, 115 A. 2d 222, the principle is reaffirmed in the following language, at pages 423, 424: "The facts in this case are so unusual that they do not fall squarely within any of the established principles of law as to metes and bounds on the one hand and monuments on the other hand. Moreover, although monuments are very important in determining questions of boundary, '[w]here the monuments are doubtful, resort will be had to the courses, distances and quantity': Post v. Wilkes-Barre Connecting R.R. Co., 286 Pa. 273, 133 A. 377."

We feel that the present case falls within this exception rather than under the general rule and that the court below was correct in holding that to follow blindly the stone monument would lead to an absurd result. As Judge GAWTHROP points out in his opinion: "If the ambiguity or mistake is resolved in favor of the stone additional errors in Defendant's deed are created because, not only are the course and distance of the east boundary wrong, but both the north and south boundaries are 12.16 feet longer than the calls therefor and the content of Defendant's lot is increased by some 4,-000 square feet. It also follows that the calls for the north and south boundaries in the deed from the common owner, Drayman, to Johnsons are erroneously short and both of the lots therein conveyed are in violation of the subdivision plan approved by the Supervisors, resulting in a misdemeanor.

"If the ambiguity or mistake is resolved in favor of the courses and distances in Defendant's deed, rather than the stone, all courses and distances in all the deeds involved and all lot areas are accurate, and all of the conveyances meet the requirements of the zoning ordinance and subdivision regulations. To ignore the monument would solve the whole problem; to give it preference over courses, distances and quantities and over the plan as last revised creates chaos."

Further support for this reasoning is found when we consider the test of adjoiners in this case. In all three deeds where the Murtagh corner is involved (Biddle, Hickman, and the deed of Drayman to the defendant) the course approaching the corner is South 79 degrees 19 minutes West and the course leaving the corner is North 26 degrees 59 minutes West. Therefore the corner can be definitely located. The Biddle deed shows that this corner is 237.29 feet from a stone, whereas the defendant's deed would show that it would be 225.16 feet from a stone. The actual survey by Houtman showed that there was a stone 237.29 feet from the corner and that there was no stone at 225.16 feet from the corner. Whether there was ever a stone 225.16 feet from the corner was never established. It is certain that there was no reason for it to be placed there by either Biddle or Hickman for they were not making any subdivision of their property. It did have a reason for being there because it marked the mutual boundary of two neighboring properties on the other side of the perimeter.

In *Allen v. Oates*, 262 N.C. 268, 136 S.E. 2d 579, it was held that a call for a stone without additional description is insufficient to justify disregarding the call for course and distance. The Court said: "We are of the opinion that a call for a stone without additional description is insufficient to justify disregarding the call for course and distance. A stone may be small

enough to be cast as a missile (John 8:7), or gigantic enough to be described as a mountain on which replicas of historic figures may be carved. Absent information as to size and how affixed to the soil, a rock falls into the category of a stake, having, as HALL, J., said in Reed v. Shenck, supra, 'more fixity than feathers floating on water,' but not that immobility required to control course and distance. HOKE, J. (later C.J.), in Nelson v. Lineker, 172 N.C. 279, 90 S.E. 251, compared the descriptive word 'stone' to a stake. Petitioners' deed calls for stones at four of its corners. None are described."

Finally, in the deed to the defendant two "monuments" are mentioned, a stone and a stake. It describes them as 225.16 feet apart. This cannot be so because in the deed from Biddle to Hickman they are stated to be 237.29 feet apart and this measurement was confirmed by Houtman's survey. Therefore one monument or the other must be wrong. It was held in *Post v. Wilkes-Barre Connecting R.R. Co.,* supra, that where there are conflicting monuments, one of which corresponds with the courses and distances, that one should be taken and the other rejected as surplusage. In the present case the use of the stake corresponds to all the other courses and distances in the deeds while the use of the stone does not. The court below was correct in rejecting it as surplusage.

Decision affirmed.