## Keto v. Schaefer

*E. Franklin Martin,* for plaintiffs.
*Gregory L. Kiersz,* for defendants.

EPPINGER, *P.J.,* November 25, 1983—Jorma and Julia Keto, plaintiffs, and James and Suzanne Schaefer and Thomas and Victoria Daley, defendants, are disputing title to a strip of land in Antrim Township, Franklin County, on what could be called the east side of the Ketos' property and the west side of the Schaefer and Daley tracts. The Schaefers' land lies to the north of the Daley property.

The strip of land includes a traveled lane leading to the Ketos' house and outbuildings and beyond them and further to the south, a grass bed lane which does not show much sign of use. This is the part of the strip closest to the Keto buildings.

East of the lane is a small wooded ravine and at the bottom of the ravine there is a stream bed

which, when it contains water, flows from north to south. East of the stream there is evidence of an ancient wire fence. The Ketos contend this fence locates the boundary between their property and Schaefers and Daleys. The latter argue that the Ketos got only what their deed calls for and this puts the line west of the lane, excluding the Ketos from title to any part of the lane leading to their house and beyond the ravine.

As a part of the trial, we viewed the premises and the Ketos seemed to be in possession of at least the lane, if not the ravine to the old fence line. There is nothing in the Ketos' deed which speaks of their right to use the lane which, to us, would have expressed the intention of the common grantor to deny them ownership of the lane. We do not suggest that the absence of such provision affects their right to use, regardless of the outcome of this case, but mention of such a right, if the lane is not on their property, would have been helpful in deciding this case.

As among these three parties, the Ketos are senior land owners. All three plots were subdivided from a tract originally owned by W. Maynard Brown. The Ketos purchased their property on October 10, 1975, by deed from John Erlewine, who was preceded in title by Walter Scott[1] and Brown. James and Suzanne Schaefer purchased their property by deed dated June 26, 1972, from Myron Stone who was preceded in title by Bessie Lowery and Brown. Thomas and Victoria Daley acquired their tract on

---

1. Walter Scott was the original and first grantee from Maynard Brown. His deed was dated April 11, 1942, and recorded March 2, 1946, while the Brown deeds to Lowery and Angle were dated June 12, 1952, and September 19, 1972, and recorded June 13, 1952, and September 27, 1972, respectively.

August 7, 1981, by a deed from Irving Daley who was preceded in title by Roy Angle and Brown. The deed to Angle was made by Brown's estate.

The Ketos contend that though the various deed descriptions have continued down, they do not accurately reflect the intention of Brown and the other parties. Jorma Keto reached this conclusion before he purchased his tract by doing a record check of the land he was going to buy and the adjoining properties. By drafting the descriptions out of Brown, Jorma found that there were no contiguous boundaries for any of the conveyances. Now the Ketos ask us to reform their deed contending that a mistake was made in their deed description from the original grantor, Brown.

On the one hand, the drafts of the courses and distances of the deeds of the Ketos and Schaefers with relation to the original Brown boundaries result in a gap between the property lines while the Schaefers' deed recites that its westernmost line (the one adjoining Ketos') probably overlaps Ketos'. So we are not helped much by the descriptions.

We were presented with expert evidence on both sides. The Ketos called T.D. Wilkinson III, an Associate Professor of Engineering at Mont Alto Campus, Pennsylvania State University. Wilkinson plotted the original Brown tract and then plotted the conveyances out of Brown and made overlays to demonstrate to the court exactly how many errors there were if plottings alone were relied upon. He demonstrated graphically the gap between the Keto line and the Schaefer and Daley lines and showed that at one point unaccounted in the Byers & Runyon survey, hereinafter mentioned, Brown left a corridor to reach lands now owned by Daley from the Cosey Town Road. This evidence further reinforces

our conclusion that the descriptions of the real estate are not very helpful.

Schaefer and Daley employed Byers & Runyon who surveyed out the tract, starting with their understanding of the original Brown tract. They said they relied upon certain natural monuments still on the ground. These were largely rock outcroppings. They ignored the old fence line that Wilkinson said he believed was the line contended for by the Ketos and an iron pin found near the creek in line with the ancient fence. They had to stretch certain lines in order to get the Brown tract as a whole to close and to fit the tracts of Keto, Schaefer and Daley as they altered the descriptions into the Brown tract.

A significant change in a call that Byers & Runyon adopted was the move of one "point" on the Ketos' deed from "a point 12 feet from the water's edge"[2]. They adopted instead a point at least thirty feet from the creek. This is crucial since if they extended that line nearer the creek, then the next line, the boundary between Keto and Daley would come closer to the old fence line urged by Ketos and Wilkinson.[3]

Wilkinson talked to Walter Scott, the original grantee from Brown of the Keto tract and reported

---

2. The land is near the Conococcocheague Creek.

3. It is possible that the bank of the Concococheague has changed since the time of the making of the first conveyance of the Keto property, but we cannot tell where or by how much. We do note that this point is on the outside of a bend in the creek which faces a large cliff on the inside. It would seem that in high water the creek's outside bank would overflow while the inside bank would remain relatively stable. How that would precipitate a moving of the point further away from the creek as Byers & Runyon did we cannot see. We think it would be closer to the creek.

that Scott said he walked the property line with Brown and that Brown told him the boundary line was the ancient fence. This ancient fence line was at the same location of the call from the western-most line of the Schaefer deed and the same line as the westernmost boundary of the Daley deed if the Daley deed began nearer the creek. Wilkinson also found that the bearing of the ancient fence, the property line pointed out to him by Scott, is North 33 degrees East and the next line described by Scott has a bearing of North 48 degrees East and this is the same bearing mentioned in the Ketos' deed as their easternmost property line.

Arguments presented to us take two directions. The Ketos argue that the whole matter is to be decided by the intention of the parties. Baker v. Roslyn Swim Club, 206 Pa. Super. 192, 198, 213 A.2d 145, 149 (1965). The Schaefers and Daleys say that we should follow traditional rules of priority for resolving ambiguous boundaries: (1) that monuments prevail over courses and distances except where the monuments are doubtful or in dispute and that monuments are incorporated along with maps or plats into the description and the location of the land may be determined by the plan; (2) that where there is a conflict between courses and distances and calls for adjoiners, the latter will govern; and (3) where monuments or courses and distances are doubtful, quantity is a material factor in determining the intention of the parties. Howarth v. Miller, 382 Pa. 419, 115 A.2d 222 (1955); Baker v. Roslyn Swim Club, supra.

We agree with the Schaefers and Daleys that these rules should normally be applied. However, situations arise where it is neither possible nor expedient to do so. We think this is one of those situations.

As in Howarth, supra, "the facts in this case are so unusual that they do not fall squarely within any of the established principles of law. . ." Id., at 423-424. In fact, the evidence in this case can lead us to but one clear conclusion, which is that errors were made which have resulted in the existing ambiguities.

When it is clear that mistakes have occurred somewhere, the normal rules of construction and priority become irrelevant. The Court may then resolve the dispute by rendering a decision which is most consistent with the apparent intent of the original grantor, Baker, supra, at 198, 149; Laflin Borough v. Yatesville Borough, 54 Pa. Commw. 566, 570-571, 422 A.2d 1186, 1188-89 (1980). See also Brolaskey v. McClain, 61 Pa. 146 (1869); Dallas Borough Annexation Case, 169 Pa. Super. 129, 82 A.2d 676 (1951).

We find it inconceivable that the original grantor, W. Maynard Brown, would have conveyed the Ketos' property to their predecessors in title without access to the road which serves as their sole right of way to the public road. Such access could have been provided by including it in the conveyance or by providing a right of way in the deed. Since the latter was not done, we conclude that Brown intended it to be included in the grant of the fee.

The wooded ravine that is part of the disputed land is virtually useless to the Schaefers and Daleys. There was evidence that the Ketos' predecessors in title used it as a place for pigs. We accept it that Ketos' predecessors did use the land for this as it seems a good place for pigs to wallow. Therefore, all of the land in dispute seems to be useful to the Ketos' property while having no value or little value, at most, to the adjoiners.

As mentioned earlier, Wilkinson talked to Scott who was the purchaser of the Ketos' tract from Brown. Scott said Brown told him his line was at the ancient fence. This is one of the few unambiguous statements we heard, and we accept it as showing that the line was at the ancient fence, for it directly states the intention of the common grantor. Baker, at 198; Laflin Borough v. Yatesville Borough, supra, at 571, 1189.

Where it is difficult for surveyors to sight a line because of trees or other obstructions, they resort to an offsetting of the line; that is they move over to a point where sighting is clear. An error in field notes or an error in the drafting room may result in the line being drafted on the offset rather than on the line the parties intended. In this case it is significant that the ancient fence line is offset 30 feet from the line in Ketos' description. We conclude that such an error was made.

Finally, the fact that the Ketos are senior in title to both the Schaefers and Daleys is also important.

"Where there is a clash of boundaries in two conveyances from the same grantor, the title of the grantee in the conveyance first executed is, to the extent of the conflict, superior. . . 11 C.J.S Boundaries Section 60." Merlino v. Eannotti, 177 Pa. Super. 307, 316, 110 A.2d 783, 787 (1955).

We, therefore, hold that the boundary between the parties should be that established by the ancient fence line, the one contended for by the Ketos. This would include within the Ketos' property the lane and the ravine which we have mentioned.

## DECREE NISI

November 25, 1983, the prayer of plaintiffs' complaint is granted, and it is ordered:

1. The following property is decreed to be plaintiffs:

(a) As to defendants James E. and Suzanne I. Schaefer, the

(a) following property is decreed to be Plaintiffs:

Beginning at an iron pin set by Byers and Runyon near a willow tree on lands of Plaintiff herein; thence South 45 degrees 08 minutes 05 seconds East (South 47 degrees 27 minutes 59 seconds East) 44.2 feet to a point at lands of Schaefer, Defendants herein; thence along lands of Schaefer, North 48 degrees East, 324.66 feet through a white oak stump (at 217.9 feet) to a point in a private road at other lands of plaintiff; thence along said road through lands of plaintiff South 84 degrees 38 minutes 01 second West (South 82 degrees 15 minutes 12 seconds West) 25.27 feet to a point in the center of the road; thence angling across the road South 59 degrees 36 minutes 45 seconds West (South 57 degrees 13 minutes 56 seconds West) 100.00 feet to a 7/16 inch diameter iron rod with nut at the edge of the road where it is intersected by the edge of the clearing of the West Penn Power Company right-of-way; thence turning back to the road, North 08 degrees 39 minutes 43 seconds West, (North 11 degrees 02 minutes 32 seconds West) 9.95 feet to a point in the road; thence angling across the road and across a run South 48 degrees 11 minutes 21 seconds West (South 45 degrees 47 minutes 01 second West) 214.29 feet to an iron pin set by Byers and Runyon under a willow tree, the place of beginning.

Courses given in parenthesis are courses of Byers & Runyon shown on plat recorded in Franklin County Plat Book Volume 288B, Page 889; other courses are courses and distances based on merid-

ian as established by courses of Plaintiff Keto's deed.

(b) As to defendants Thomas E. and Victoria A. Daley, the following property is decreed to be plaintiffs:

Beginning at an iron pin set by Byers and Runyon on the property of plaintiff; thence through lands of plaintiff South 31 degrees 56 minutes 42 seconds West (South 29 degrees 32 minutes 22 seconds West) 606.29 feet to an iron pin set by Byers and Runyon in the east bank of the Conococheague Creek; thence continuing through lands of plaintiff South 26 degrees 26 minutes 42 seconds West (South 24 degrees 2 minutes 22 seconds West) 126 feet to a point in or near the centerline of the Conocheague Creek; thence with the centerline of the Conococheague Creek, South 64 degrees 16 minutes 17 seconds East (South 66 degrees 40 minutes 42 seconds East) 28.4 feet to a point; thence with lands of defendant North 33 degrees East approximately 125.7 feet to a point in the east bank of the Conococheague Creek; thence along lands of Defendant by an ancient fence North 33 degreees East 631.3 feet to a double trunk walnut tree, location of an obliterated corner post of the ancient fence above mentioned; thence North 48 degrees East 13.1 feet to a point; thence North 45 degrees 08 minutes 05 seconds West (North 47 degrees 27 minutes 59 seconds West) 44.2 feet to an iron pin set by Byers and Runyon under a willow tree in lands of plaintiff; thence through lands of plaintiff South 48 degrees 11 minutes 21 seconds West (South 45 degrees 47 minutes 01 second West) 52.80 feet to an iron pin at place of beginning.

Courses given in parenthesis are courses of Byers & Runyon shown on plat recorded in Franklin County Plat Book Volume 288B, Page 889; other

courses are courses and distances based on meridian as established by courses of plaintiff Keto's deed.

2. The Recorder of Deeds shall note on the plat recorded at Volume 288B, Page 889, as follows:

"The line shown as boundary lines of Jorma R. Keto et ux. are not to be accepted as accurately depicting the said Keto boundary lines of courses and distances."

3. The parties shall each pay their own costs.

This decree nisi shall become absolute unless exceptions are filed within 30 days from the date hereof.

Upon the decree becoming absolute, a copy of this order shall be recorded by the Recorder of Deeds who is directed to index Paragraph 1(a) with James E. Schaefer and Suzanne I. Schaefer, his wife, as grantors and Jorma R. Keto and Julia H. Keto, his wife, as grantees and Paragraph 1(b) with Thomas E. Daley and Victoria A. Daley, his wife, as grantors and Jorma R. Keto and Julia H. Keto, his wife, as grantees.