## Thompson et al. *versus* Kauffelt.

1. A deed, in which the land conveyed is described as bounded by adjoining lands conveyed by the same grantor at a prior date, yields to the calls of the prior deed.

2. A fence which was in existence at the time of the conveyance of property and allowed to stand over twenty-one years, will not be considered as marking the boundary as against a survey made in accordance with the calls of the deed.

3. When it is sought to establish a title by adverse possession for more than twenty-one years, it is not necessary to establish any connection between the various tenants of the property; successive privity between the landlords is sufficient.

4. Where actual possession is proved by parol evidence, it is generally for the jury to determine whether the possession has been adverse and continuous.

5. An accidental vacancy, such as is incident to a temporary want of a tenant, will not break the continuity of an adverse possession; to accomplish this, there must be an actual abandonment, or possession taken by one not connected with the previous owner.

May 20th, 1885. Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ. PAXSON and STERRETT, JJ., absent.

ERROR to the Court of Common Pleas of *York county:* Of January Term 1885, No. 459.

Ejectment, by Henry Kauffelt against William A. Thompson and Alexander R. Thompson, owners, and Zachariah Oleweiler, tenant, to recover a small triangle of land in the borough of Wrightsville, described in his præcipe as beginning at the northeast corner of plaintiff's brick house on Front street, running thence back along the brick wall of his house fifty feet nine inches, thence by a line at right angles with said wall

14 OUTERBRIDGE—14

[Thompson *v.* Kauffelt.]

four feet eight inches, and thence by a straight line to place of beginning.   Plea not guilty.

It was admitted that the title to the premises in question, prior to 1857, was in the Wrightsville, York and Gettysburg Railroad Company.

In 1857 the property of said company, being two lots on Front street in the borough of Wrightsville and including the triangle in dispute, was sold by the sheriff; Henry Kauffelt, the plaintiff, becoming the purchaser of the southern lot and Henry Hantz, through whom the defendants claim by sundry mesne conveyances, becoming the purchaser of the lot on the north.   This sale, for reasons which do not appear, was never consummated, but on April 28th, 1862, the said railroad company conveyed to Kauffelt the lot purchased by him at said sale, charging him with interest on his bid.

The premises conveyed to Kauffelt are described as follows : " All that certain lot or parcel of ground, situate in the borough of Wrightsville, in York county, Pennsylvania, bounded on the north and west by ground lately conveyed by said railroad company to Henry Hantz, on the south by Garden alley of said borough, and on the east by Front street of said borough. The northern boundary being about one hundred and fifteen feet in length ; the western boundary about fifty-one feet in length ; the southern boundary about one hundred and seventeen feet, and the eastern boundary on Front street about sevty-eight feet long, with houses and other buildings thereon erected."

The deed to Henry Hantz, mentioned in the above description, is dated March 27th, 1862, and conveys to him : " All that certain lot or parcel of ground situate in the borough of Wrightsville, York county, Pennsylvania, described as follows, to wit : Beginning at the northeastern corner of the brick house (now occupied by William Moore), at its contact with Front street, thence along the west line of Front street, northwardly till it meets Hellam street (about 138 feet), thence along Hellam street to Howard street, about 178 feet, thence along said Howard street to Garden alley, thence along said Garden alley, eastwardly, fifty feet, thence, northwardly, by a line parallel to said Howard street, fifty-one feet, thence by a straight line eastwardly to the place of beginning."

Plaintiff claimed that the triangle in controversy was part of the lot conveyed to him by the first mentioned deed, while defendant claimed that it was not so conveyed and also claimed title to the same by adverse user for more than twenty-one years.

The principal question was as to the true location on the ground of the north line of plaintiff's property.   Plaintiff

[Thompson v. Kauffelt.]

claimed that its location was as indicated by the dotted lines in the following diagram; the defendants, on the other hand, contended that the line was properly indicated by the solid line, which represents a fence as it has existed on the premises from a time previous to the conveyances from the railroad company, the balance of the boundary being the north wall of the brick house.

The strip between these two lines, forming the triangle marked A., in the following draft, is the property described in the writ, and constitutes the premises in dispute.

The plaintiff, in order to prove the location of his northern line, as claimed by him, produced the surveyor, who testified substantially to the following effect: He made a survey from the description in the deeds to Hantz and Kauffelt and from the borough maps, and located the plaintiff's western and northern line, as shown by the dotted line in the above diagram; from the description in the Hantz deed and from this survey, the triangle in dispute was in plaintiff's lot and not in the Hantz lot. On cross-examination, however, the witness testified that this survey made the southern boundary of plaintiff's lot one hundred and forty-six feet in length, whereas his deed called for "about one hundred and seventeen feet," and that a line fifty-one feet in length, drawn from a point on Garden alley, one hundred and seventeen west of Front street

'[Thompson *v.* Kauffelt.]

and parallel to Howard street, would meet at its extremity the prolongation of the wall of the brick house, thus excluding the triangle from the Kauffelt property.

Defendant claimed that either this latter line or the line as fixed by the fence and the north wall of the brick house was the proper line.

Defendants also claimed title to this triangle by adverse user for more than twenty-one years, and to sustain this claim proved that at the time of or soon after the sheriff's sale in 1857, a small house was built on the Hantz lot against the north wall of the brick house, which covered the acute angle of the triangle in dispute to the depth of about twenty-five feet, the other portion of the triangle was used by the tenants of the house on the Hantz lot as a part of their yard. Rudy, a witness called by defendant, testified that he occupied this small house as a tailor's shop from 1857 to 1869 as a tenant of Hantz, but he was not very clear as to exactly what property he used. Mary Critchfield testified that she occupied the dwelling-house on the Hantz lot from 1864 to 1871 and used the yard in the rear up to the brick wall of the Kauffelt house. In 1872, the defendants leased the property and used the yard in the rear, and on June 7th, 1877, they purchased the same.

The defendants submitted the following point:

" The courses and distances in a deed always give way to the boundaries found upon the ground ; and if the jury find in this case upon the facts in evidence before them that the fences inclosing the defendants' premises have stood there as a boundary line unchanged as they were when this suit was brought, for twenty-one years and upwards, then the plaintiff cannot recover in this suit, and their verdict must be for defendants.

*Answer.* This point is refused. (First assignment of error.)

The court charged the jury, *inter alia,* as follows :

" The defendants do not claim title, as I understand it, from any evidence that is produced in the trial of the case, to this piece of ground that is claimed by the plaintiff, from any direct conveyance to them. At least, there is nothing that I can perceive in the case that justifies any such claim. But they claim under a deed, in the first place, for their property from this same Wrightsville, York and Gettysburg Railroad Company, in which the lines are given, and the description of the property, and the description of the property does not tend in any way to contravene or interfere with the survey and descriptions in the deed of the plaintiff." (Second assignment of error.) . . . . . " The defence in this case is that there has been such a user and occupation for the space of twenty-one years as gives title under the Statute of Limitations. I must instruct you that there is not sufficient evidence for you to find

[Thompson v. Kauffelt.]

such title." (Third assignment of error.) . . . . . " These defendants did not buy the property they hold till 1877, when they bought from Mr. Warfel; and the actual claim to this property, as far as this case shows, and it only appears then, was after their own purchase of this land. There is nothing to show, that under any prior owners there was any actual claim, or any use and occupation contrary to what is shown by the deeds. Besides, I doubt very much in a case of this kind, whether the claim made by them, the defendants, could be supported by evidence of any occupation of preceding owners." (Fourth assignment of error.) . . . . . " Your verdict should therefore be for the plaintiff for the premises described in the writ." (Fifth assignment of error.)

Verdict and judgment accordingly. Defendants then took this writ, assigning for error the refusal of their point and the portions of the charge above quoted.

*W. C. Chapman,* for plaintiffs in error.—The facts shown in evidence were sufficient to go to the jury as bearing on the question of boundary and adverse possession: Lodge *v.* Barnett, 10 Wright, 477; Potts *v.* Everhart, 2 Casey, 493; Cunningham *v.* Patton, 6 Barr, 355.

If successive privity exists between several occupants of the land, the last occupant may avail himself of the occupancy of his predecessors, in order to make a title by adverse possession: Wood on Limitations of Actions, 579; Overfield *v.* Christie, 7 S. & R., 173; Scheetz *v.* Fitzwater, 5 Barr, 126; Hughs *v.* Pickering, 2 Harris, 297; Cunningham *v* Patton, 6 Barr, 355.

*Williams* (*Cochran* and *James W. Latimer* with him), for defendant in error.—Where the grantor of both parties, being the common owner of the entire property, sees fit to ignore existing division lines and to convey in purparts by lines of division arbitrarily adopted by him, it would be monstrous to claim that one of the grantees could claim as against the other to hold by the originally existing division lines which the common grantor chose to disregard: Stuven *v.* Kalchreuter, 8 W. N. C., 44; Petts *v.* Gaw, 3 Harris, 222.

The proof relied on by the defendants below does not show such adverse and notorious possession as the Statute of Limitations requires: Shroder *v.* Breneman, 9 Harris, 225; Washabaugh *v.* Entriken, 10 Casey, 74; Groft *v.* Weakland, Id., 304. When the facts are admitted, it is a question of law whether they show an adverse possession: Rung *v.* Shoneberger, 2 Watts, 27.

In order to give title under the Statute of Limitations, the possession of the claimant cannot be tacked to that of a former

possessor under whom the claimant does not show title: Frick *v.* O'Farrell, 1 Philadelphia 18; Schrack *v.* Zubler, 10 Casey, 38; S. C., 10 Wright, 67; Moore *v.* Collishaw, 10 Barr, 224.

Mr. Justice CLARK delivered the opinion of the court, October 5th, 1885.

The parties to this ejectment trace their title to a common source. The small piece of land in dispute is admittedly part of a large tract, formerly owned in fee by the Wrightsville, York and Gettysburg Railroad Company. The deed to Henry Hantz was dated 27th March, 1862; that to Henry Kauffelt, 28th April, 1862. The plaintiff claims title to the land in dispute under the deed last mentioned; the defendants under the deed to Hantz, and also by the Statute of Limitations. Dismissing, for the present, the claim under the Statute, we will consider the case presented by the conveyances mentioned.

The deed to Hantz was first, in the order of time, and the grantee therein is, of course, first entitled, according to the full measure of the grant therein contained. The place of beginning is unmistakable, and the town plot of Wrightsville, the correctness of which is not disputed, gives all the data necessary to ascertain the exact and true location. As the calls of the Kauffelt deed are for the lines of the Hantz lot, and the latter is first entitled, the lines of the former will not only yield to, but will extend up to the lines of the latter. The true line of division therefore, between these lots, unless some mark or monument, found upon the ground, should give a different designation, is a line beginning at a point on the line of Garden alley, fifty feet distant from Howard street, thence running northwardly, parallel to Howard street, fifty-one feet, and thence by a straight line, eastwardly, to the north-eastern corner of the brick house, formerly occupied by William Moore, at its point of contact with Front street. Frank J. Magee, a surveyor, states that he has surveyed the entire section between Second and Front, and between Chestnut and Hellam streets, according to the borough map; that he has located the lots on Howard street and the line of Garden alley, according to the same map; that by a survey which he made from the description in the deeds to Hantz and Kauffelt and the location of the streets by the borough map, the triangle now in dispute, is embraced in the boundaries of the Kauffelt lot and not in that of Hantz. He further states, in substance, that about one foot from the point on Garden alley where this division line begins, he found an old fence which ran almost parallel with Howard street, to a point about forty-eight feet from Garden alley, and that from that point it ran in a direct course for the northeastern corner of the brick house referred

to, but terminated opposite to, and four feet eight inches distant from, the northwest corner of the house, with which it is by a cross fence connected; and that this fence, if it had been extended to the northeastern corner of the house, would also embrace the ground in dispute. These fences, it is admitted, were made long before the deeds of 1862, and have ever since been permitted to stand on the same ground. The fences were not made therefore to mark the lines, and it is equally clear, from the fact that the fence at this point does not conform to the call, that the line was not made to run with the fence. The court was undoubtedly correct therefore in saying to the jury: "If you believe the testimony of Mr. Magee, and there is no reason whatever to doubt it, there is nothing in the title produced by the defendants, or anything in the surveys or maps produced by the defendants, which tends in any way to interfere with the claim of the plaintiff as regards this little piece of land, or to lead us to doubt in any way the correctness of that claim."

Magee is the only witness who testifies on this subject; there is no contradiction of his testimony, no conflict in the evidence; he was a witness called by both parties, and testified substantially to the same facts in behalf of both; there was therefore no question of fact to submit to the jury, and the court was clearly right on this branch of the case in directing a verdict for the plaintiff.

But the defendants contend that there was evidence which should have been submitted to the jury upon their claim of title under the Statute of Limitations. To sustain this defence, the burden of proof is upon the defendants; they must show an actual, continued, visible, distinct and hostile possession for twenty-one years. There is evidence that in the year 1856 or 1857 the title of the railroad company in both lots was sold by the sheriff of York county, and that at this sale Hantz and Kauffelt purchased the property which was afterwards conveyed to them, respectively, by the company; that the sheriff sales were for some reason never consummated, but the purchasers at the time entered into the possession of their respective lots, and the company afterwards completed the titles which had their inception in the sheriff's sale, by the execution of the deeds referred to. At the time of or soon after the purchase at the sheriff's sale, a small house was built on the Hantz lot; it was built against the north wall of the brick house, and covered the acute angle of the triangle in dispute to the depth of about twenty-five feet. We have no evidence as to who held the possession of this house prior to 1857, but Kauffelt testifies that from the time of the purchase in that year, Hantz was in the continuous possession. It would appear that the posses-

sion of Hantz, spoken of by Kauffelt, was in part by his tenant Rudy, who says he occupied part of the property as a tailor shop from 1857 to 1869. In his examination in chief he testifies that the yard in the rear of the shop ran up to the line of the brick wall, as it is now, and was possessed and occupied by him along with the building to the wall of the brick house; on his cross-examination, however, he says it was not occupied by anybody or used for any purpose. Mrs. Anna Moore occupied the Kauffelt house for ten or eleven years, from 1859 to 1869 or 1870. She says: " The fence just came to the corner of the house and extended out a piece and ran up to the upper end of the lot. This yard was open at that time, and was occupied by Mr. Hantz' tenants. It was occupied by them up to the house, to the wall of our house. I don't remember that any wood was piled up there. It was open and they occupied it."

In 1869 some changes were effected on the property; the height was increased from one to two stories, the new part being built up to the wall of the brick building, and a portion cut off for a barber shop; the building then consisted of three parts, a dwelling, a tailor shop and a barber shop. Mary Critchfield testifies that she occupied the dwelling with the yard in the rear up to the brick wall of the Kauffelt house from 1864 to 1871. In the year 1872 the defendants, William A. and Alexander R. Thompson, leased the property, or a part of it, for a tobacco store, and used the yard in the rear as a place to deposit the stems. During the period of their tenancy they purchased the property and have since remained in the possession. M. R. Sourbeer occupied the dwelling from November, 1876, until the spring of 1878, as the tenant of Warfel at first, but afterwards of the Thompsons, to whom he attorned.

On the question of the continuity of the possession the testimony is certainly very meager and unsatisfactory; although the fact is not anywhere denied it does not very clearly appear that the various parties in possession from time to time were tenants of the successive owners; there are some general expressions found in the testimony to that effect, but the question is certainly left in some degree of doubt. The fact would appear to have been assumed at the trial; the learned court in the charge says: " The most that the defendants have offered to prove in the way of occupation is from 1859, by tenants upon the property occupied by them," etc. It is of course unnecessary to establish any connection between the tenants; the possession of the tenant is the landlord's possession; if successive privity exists between those occupying the relation of landlord to the several occupants, it is sufficient; and when actual possession is proven by parol evidence,

[Myers v. Commonwealth.]

whether it is adverse and continuous is in general a question for the jury: McMasters v. Bell, 2 P. & W., 180.

In order to break the continuity of possession, the vacancy must not be merely accidental, or such as is incident to a change of tenants, or for want of a tenant; but if there be an abandonment for any time, or if one disconnected with the previous holder take the possession, the continuity is broken.

It is clear that Hantz entered into the possession of the property after his purchase; Kauffelt testifies that he did and that his possession was continuous.   There is some evidence, we think, whether sufficient to satisfy a jury, we cannot say, that the buildings covering a part of the ground in dispute, were, from 1857 to the bringing of this suit, in the actual possession of persons who were the tenants of the several successive owners of the Hantz title; there is no evidence, at all events, of any abandonment, or of the entry of any one shown to be disconnected with the Hantz title.   There is also some evidence that the several lessees occupied the yard in the rear to the wall of the brick house, sometimes for cultivation and sometimes for storage of wood, tobacco stems, etc.   It must be admitted that the case exhibited by the evidence on part of the defendants is not strong, but we think it should have been submitted to the jury; the facts are but feebly developed; but as the cause goes back for a new trial, it will doubtless be more fully presented.

The judgment is reversed, and a *venire facias de novo* awarded.