## B. W. JACKSON ET AL. v. J. W. LAMBERT ET AL.

### ERROR TO THE COURT OF COMMON PLEAS OF SULLIVAN COUNTY.

Argued March 16, 1888—decided October 1, 1888.

1. Where land in dispute is claimed under a warrant issued in March 1785, on which there was a survey in April 1785, and there are no controlling marks for that survey to be found, resort may be had for its location, to a block of adjoining surveys purporting to have been made in 1784.

2. As a line run in the spring of 1785, before the growth of that year, would count the same by blocking as a line run in the fall of 1784, it may be shown that a corner, on the line in dispute, counted back by the growth of the trees to 1784, and, from the marks of surveyors and returns made by them, that there was a block of surveys of that year into which the one in dispute was located in 1785.

3. The question of location is always one of fact; therefore it is competent for a surveyor, properly instructed by a personal examination of marks on the ground, to give in evidence his opinion as to the location of a particular survey.

4. Where the south line of the tract in dispute is in controversy, it is error to affirm a point which assumes that a call for an older survey on the west is conclusive that the south line of both is the same.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 73 January Term 1888, Sup. Ct.; court below, No. 32 September Term 1884, C. P.

### Statement of Facts.

On June 28, 1884, B. W. Jackson and George C. Jackson, executors of the will of George D. Jackson, deceased, and B. W. Jackson, brought ejectment against William Lambert, to recover possession of a tract of 80 acres and 52 perches in Forks township. The plea was, not guilty.

At the trial on September 28, 1886, the plaintiffs put in evidence a warrant in the name of Nathan Fields, Jr., dated March 11, 1785, returned as surveyed on April 8, 1785, for 401 acres and 142 perches. This was followed by evidence of an assessment of taxes upon a portion of this land, as unseated land, and of treasurer's deeds, dated September 1, 1858, and August 5, 1876, respectively, and other mesne conveyances vesting the title to the land in dispute, as was claimed, in the plaintiffs. The defendant claimed title under a warrant and survey, followed by patent issued on March 30, 1860, to T. P. Wilkinson, the title passing eventually to the defendant. This survey lay on the south of the Nathan Fields, Jr., survey.

| S. 30 W. | Hunt Downing 401¾ War. July 8, 1784 Sur. Oct. 26, 1784 | Rich'd Thomas 401¾ War. July 8, 1784 Sur. Oct. 26, 1784 | Jos. Lownes 403¾ War. July 8, 1784 Sur. Oct. 26, 1784 | |
| --- | --- | --- | --- | --- |
| | Beech Post | Post Post | Post Post | |
| H. White. | Thos. Poultney 401¾ War. July 8, 1784 Sur. Oct. 25, 1784 | Nath. Fields, Jr. 401¾ War. Mar. 11, 1785 Sur. April 8, 1785 | Dav. Lownes 403¾ War. July 8, 1784 Sur. Oct. 25, 1784 | Atmore. |
| | Post by Beech Beech | Beech Beech | Beech Post by Beech | |

S. 60 E.

Vacant  Vacant  Vacant

The diagram above, taken from the official connected draft in evidence, will illustrate the question in controversy. The facts from which it arose, sufficiently appear in the charge of the court below.

In the plaintiffs' case in chief, C. D. Eldred called. The witness was a practical surveyor, and had testified to surveys made by him in the examination of the lines in dispute:

Q. You have stated that the line running from the beech at the corner of Wm. Atmore, across to the beech at the corner of the Henry White, is a line of 1784?

Yes, sir.

Are you able to state positively whether that line was run in 1784 or 1785?

Only from this fact: a line of 1784 run in the Fall, and one in 1785, before the growth of that year, would count the same date precisely; but from the actual work of surveyors done and returns made by them, it is shown that this line continued, and there was a block of surveys of 1784 located on it further west, and therefore there was such a line run in 1784.

Counsel for defendant object to the answer, it being what the court has already excluded, and ask that it be stricken out.

By the court: When a surveyor testifies that he has counted the rings upon the block, and that it counted to 1785, we understand that he means by that that the mark upon that tree in 1785 would count, as he has counted it, a mark put upon it in the spring. Now, if there is any misunderstanding and difference of opinion upon that subject, you can examine surveyors upon it. Here is a line, and the surveyors say it counts to 1784. What do they mean by that? Do they make an allowance for the one year—that is, do they count 1783 rings, and then allow one for the year in which it was counted, or do they count the full number of eighty-four years? Let the surveyor explain that, and then the jury will be able to understand all that the marks show, and all that can be legitimately inferred from the marks. We sustain the objection and strike out the answer.[2]

The same witness, continued:

Counsel for plaintiffs propose to show that the line extended westward from the Atmore beech and counted back to 1784, is a continuous line for many miles west and north, to be fol-

lowed by proof that the warrants are located upon this line with surveys returned into the land office bearing date of September, 1784. This for the purpose of fixing the date of the line from the Atmore beech to the White corner.

Counsel for defendant, renewing former, add the further objection: That two of the tracts, the Thomas Poultney and the David Lownes, themselves show a return of survey of October, 1784.

By the court: The objection is sustained.[3]

The same witness had been examined as to the John Poultney survey and others, located north of the Nathan Fields, Jr.:

Q. If the block of surveys, of which the Hugh Roberts, as far east as Black Creek, the John Kaighn, the William Atmore, the David Lownes, the Caleb Lownes, the Nathan Fields, Jr., and other tracts as far north as the John Poultney, are part, are not located by the lines of 1777, can they be located by any other lines found of the dates of the surveys or older?

Counsel for defendant object: He is now asking the opinion of the surveyor as to the location of a number of tracts of land which are not in question, have not been questioned so far, and will not be questioned in this case.

By the court: We sustain the objection to that question.[4]

The same witness: Will you state as a surveyor whether you consider the John Poultney to be a well located warrant upon the ground?

Yes, sir.

Counsel for defendant object, that the question is leading the witness to express an opinion as to the location of one of the surveys, which is claimed is in the block of surveys with which the land in dispute is connected, is a legal conclusion and not a matter of fact.

By the court: The question for the determination of the jury in this case is where the Nathan Fields, Jr., tract is located; and, in order to ascertain the location of that tract, it may be necessary to ascertain the location of other tracts, and that is for the jury from the evidence in the case. A surveyor is put upon the stand, and he is asked to give his opinion as to the true location of the tract. That is the question for the jury to determine from the evidence in the case. And by putting the question and getting an answer from an expert

you get the expert in the place of the jury. Now the question is a question purely for the jury, and you can bring before the jury all that the expert has seen and found upon the ground; every fact that will assist the jury in determining the question, we can draw from the expert, but we cannot draw from the expert the determination of the question itself. We sustain the objection. This question is whether the tract is well located upon the ground; that is rather a different question from the one we have done arguing, but we think it probably falls within the same reason, and we sustain the objection.[5]

At the close of the evidence, the court, SITTSER, P. J., so far as material to the cause as decided, charged the jury and answered the points presented as follows:

The main dispute between the parties to this case, is as to the true location of the Nathan Fields, Jr., warrant and survey. Two surveys have been given in evidence, and one of them shows a beech at the southeast corner and none at the southwest corner. The other, which is the older copy, shows a beech not only at the southeast corner, but also at the southwest corner. This, I believe is the only difference between the two copies which have been given in evidence.

A surveyor, with this warrant in his hands, going upon the ground for the purpose of locating it, would of course, examine it to see what its calls were; examine it to see what marks upon the ground were called for, or what the adjoiners were. And you, endeavoring to determine what was the true location of this warrant, will also examine it, see what it calls for by way of marks upon the ground, such as trees or lines, by waters put upon it, by its calls for adjoiners, and then apply it to the facts in this case, as testified to by the surveyors and by the witnesses that have been called, and make up your minds as to its true location.

Upon the northern line, at the northeast corner, a post is called for: at the northwest corner a post is called for. This is not an indication that the north line of the tract was run upon the ground; it is rather an indication that it was not run. Upon the south line a beech is called for at one corner, and a beech at the other corner. This is an indication that the line was actually run upon the ground by the

surveyor. And the question would arise, whether any marks have been found to indicate such a line as called for by the survey. Has the beech at the southwest corner been found, such as described in the return?

Now there are certain rules of law which apply to the location of surveys. The first is, that the survey is to be located by marks upon the ground; next, by calls for adjoiners; and next and lastly, by courses and distances. If you can find upon the ground marks of lines, or corners, corresponding with the date of the survey, which the evidence satisfies you were intended by the surveyor who located the warrant, made by the surveyor who located the warrant, for the lines of the tract, that settles the location of that tract. If the lines marked upon the ground conflict with the calls for adjoiners, you must be governed by the marks upon the ground; if the marks found upon the ground conflict with the calls for adjoiners and with the courses and distances, you must still be governed by the marks upon the ground.

So the important question for you in this case, is, have they discovered any marks upon the ground, of lines upon the Nathan Fields, Jr., warrant, corresponding with the date of the survey, which you are satisfied from the evidence in the case, were made by the surveyor at the time he located that warrant, and intended for the lines of. it? The fact that the north line calls for a post at its corners, would indicate, as I have said to you, that that line was not run. Therefore, when you look for a line, you will look for a line to answer the call marked upon the ground, on the south side of the warrant. If you fail to find any lines marked upon the ground, and the evidence fails to satisfy you that these lines were intended for the east line of the survey, then you will have to look to the calls for adjoiners to settle the location of this tract. It calls for the Thomas Poultney on the west and for David Lownes upon the east. You will then take up the Thomas Poultney or the David Lownes, and you will proceed to settle their location, and you will settle their location by precisely the same rules that I have laid down for the Nathan Fields, Jr.; you will examine all the evidence connected with these tracts; calls for adjoiners, courses and distances; marks upon the ground, and if you can find marks, which you are satisfied

Charge of Court below.

from the evidence in the case, were intended as a line of the
Thomas Poultney, then you will locate the tract by the marks
upon the ground, being governed by them, although the marks
upon the ground may compel you to disregard the calls for ad-
joiners of the Thomas Poultney, and the courses and distances.
And so with the David Lownes. When you come to the
David Lownes you will find that the survey of that tract calls,
at its southwest corner, for a beech, at its southeast corner for
a post by a beech; and then run the easterly line on a course
of north 30 east, you will find at about the middle of the tract
it calls for a beech. On the east side of the David Lownes
tract, until you get to this beech, it is marked as vacant land.
Upon the other side, going further to the north, the William
Atmore is marked. If that beech has been found in the cen-
ter of the tract, it would be a mark of importance to determine
its location. As I understand the evidence in this case, that
beech has not been found; and you have its calls for adjoiners,
and the calls for adjoiners, as I have already explained to you,
are to be used, if they do not conflict with marks found upon
the ground which you are satisfied were made by the surveyor
in locating the warrant.

There are two drafts when we come to the William Atmore,
which is called for, and to which you can look to assist you in
the location, in the event of your not finding satisfactory
marks upon the ground. You will find that the draft calls for
the David Lownes upon its west, and that as marked upon
that draft the William Atmore extends along the whole eastern
boundary of the David Lownes; that is a discrepancy which
we cannot undertake to reconcile. The Thomas Poultney lies
immediately upon the west of the Nathan Fields. That sur-
vey calls for the Hunt Downing upon the north. The Hunt
Downing calls for another tract, and that for another, and the
names of those tracts will appear upon maps sent out with you,
and so from one tract to another until they reach the John
Poultney. The John Poultney is described by courses and
distances. The warrant of survey calls for marks upon the
ground and shows certain streams of water upon it; you re-
member the evidence that has been given as to the waters
which have been found, and as to the correctness with which
the waters have been laid down upon it. Now as to streams

Charge of Court below.

of water, the rule of interpretation seems to be this : that if the surveyor actually went upon the ground and ran the lines, we would expect the streams to be laid down with a reasonable degree of accuracy where the streams cross the lines. If the surveyor did not go upon the ground to run the lines, then but little weight can be given to the location of streams as put down upon the survey.

Counsel upon the part of the plaintiffs and the defendant have furnished us with certain points, and the answers to these points, we believe, will be all the instruction that it will be necessary to give you to enable you to determine this case.

On the part of the defendant we are asked to say to you :

\* \* \* \* \* \* · \* \* \*

23. That the warrant to Thomas Poultney calls for land bounded to the " northeastward by land this day granted to Hunt Downing, to the westward by a line of marked trees which runs south thirty degrees west and to extend southwestward along the same." If it appears that the line of marked trees mentioned in the warrant did not extend southwestward of the old beech near Lick creek on the line of 1784, it affords an inference that the surveyor did not locate the warrant southwestward of that line. If that inference is supported by all the evidence in the case, the jury should find that the Thomas Poultney survey did not extend southwestward of the old beech near Lick creek, and their verdict should be for the defendant.

Answer : This is affirmed.[15]

\* \* \* \* \* \* \* \* \*

The jury returned a verdict for the defendant. On September 19, 1887, a rule for a new trial was discharged ; the same day, the death of the defendant was suggested, and John W. Lambert and George Lambert, his heirs at law, substituted. Judgment having been entered upon the verdict, the plaintiffs took this writ, assigning as error, inter alia :

2. The striking out the testimony of Eldred.[2]
3–5. The refusal of defendant's offers.[3 to 5]
15. The answer to defendant's 23d point.[15]

*Mr. E. P. Ingham* and *Mr. E. M. Dunham* (with them *Mr. R. J. Thompson*), for the plaintiffs in error.

*Mr. Thomas J. Ingham*, for the defendants in error.

OPINION, MR. CHIEF JUSTICE GORDON :

As a matter of law this is a very plain case. The plaintiffs claim the land in dispute by virtue of a warrant issued by the commonwealth of Pennsylvania on the 11th day of March, 1785, to one Nathan Fields, Jr., on which there was a survey bearing date April 8, 1785. This survey as returned to the Land Office purports to enclose 410 acres, 142 perches and allowance, and to be bounded on the north by Richard Thomas, south by vacant land, east by David Lownes, and west by Thomas Poultney. The only question we have to deal with is one of location, and, this being one for the jury, if it were properly submitted puts an end to the plaintiffs' case, but if it was not so submitted, there must be a re-trial.

It is scarcely necessary for us to state that if the original marks of the survey, or any of them, are found on the ground, they must govern ; but if they are wanting, then resort must be had to adjoiners. The plaintiffs contended that no marks, bearing the date of 1785, having been found on the ground, resort must be had for location to a block of adjoining surveys, which, though purporting to have been surveyed in 1784, the external lines thereof date back to 1777. Of course, the hypothesis here proposed may be adopted in case no governing marks are found for the Fields survey, but not otherwise. Just here we may be permitted to say that as vacant land is called for on the south, in the absence of fixed lines and corners, or controlling adjoiners, the lines of the N. Fields, Jr., running south 30 west, must have their full measure, for in such case the presumption would be strong that the surveyor did not intend that his lines should fall short in that direction. The question then, and the material one, narrows itself down to a south line which, as we understand from the evidence, is found on the ground : Was this line run in the fall of 1784, or in the spring of 1785 ? for in either case blocking would give the same result. If the former were the fact, then it is not the line of the tract in controversy, unless there is something

to show that it was adopted as such; if, however, the latter be the correct date, then the presumption would be that this is the south line of the Fields tract. How then, shall this question be determined? We know of no other method for its solution than that proposed by the plaintiffs' witness, C. D. Eldred. He says: " A line of 1784 run in the fall, and one in 1785, before the growth of that year, would count the same date precisely; but from the actual work of surveyors done, and returns made by them, it is shown that this line continued, and there was a block of surveys of 1784 located on it further west, therefore there was such a line run in 1784." This answer on motion of defendant's counsel was stricken out, and in this we cannot but think there was error. We must therefore sustain the second and third assignments.

Nor can we understand why Mr. Eldred, the surveyor, who was acquainted with the surveys of 1784, was not allowed to give his opinion as to the location of the Poultney tract. Because it was claimed that this tract was one of a block of surveys, it was somehow supposed that he could not be allowed to give his opinion as to its location, and this for the singular reason that it would be a legal conclusion. But the conclusion of a surveyor, derived from his knowledge of lines and corners found on the ground, is certainly one of fact and not of law. The question regards location, which is always one of fact, hence, one about which a surveyor who is properly instructed concerning the facts, may always give his opinion: Farr v. Swan, 2 Pa. 245; Northumberland Coal Co. v. Clement, 95 Pa. 126.

There was also error in the affirmance of the defendant's 23d point, which assumes that the fixing of the location of the Thomas Poultney would also conclusively fix that of the tract in controversy. The survey for the Poultney was made in December 1784, hence may well be located by the line of that year, but, as we have seen, it does not follow that that line is the southern line of the Nathan Fields, Jr. Adjoiners are very important in determining the location of junior surveys, and, in the absence of original marks on the ground, may be conclusive; but, there being no call for adjoiners on the south of the tract in controversy, it is clear that in that direction it cannot be thus limited. It is true, the separate draft of the Fields

calls for the Thomas Poultney on the whole length of its west line, and so far, the location of that tract is important, but it by no means fixes conclusively the southern line of the former. This answer then, making, as it does, the location of the Poultney conclusive of that of the Nathan Fields, Jr., must be treated as erroneous. The remaining assignments are not sustained, but, for the errors which we have pointed out, this case must be returned to the court below for re-trial.

Judgment reversed and new venire ordered.