Will *v.* Piper (et al., Appellant).

314

Argued April 11, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*A. C. Scales,* with him *Scales & Shaw,* for appellant.

*James Gregg,* with him *Vincent E. Williams, Smith, Best & Horn,* and *Portser, Gregg & Nichols,* for appellee.

OPINION BY WRIGHT, J., July 26, 1957:

Gretta Will instituted an action in ejectment, and in trespass for damages, by filing a complaint and abstract of title in which she alleged that she was the owner of certain land in Ligonier Township, Westmoreland County; that defendant Larkins owned the property adjoining her to the north and east; that Larkins contracted with defendants Piper for the cutting and removal of timber therefrom; and that the defendants wrongfully cut and removed timber from her land,

and had possession of a part thereof which they refused to relinquish. The defendants filed an answer with abstract of title. After a three-day trial, the jury found for the plaintiff in the trespass action against defendants Piper in the sum of $1000.00, and in the ejectment action found a special verdict, agreed upon as to form, for the plaintiff against both the Pipers and Larkins. Motions for new trial and judgment n.o.v. were overruled by the court en banc, and the prothonotary was directed to enter judgment on the verdicts. Larkins has appealed.

The description of the Will tract in the complaint is as follows: "BEGINNING at a point at the line of intersection of land of, or formerly of, Charles Frisk with land of, or formerly of, S. Hanks and D. Rhoads; thence, along the line of said land formerly of Charles Frisk, North 46½° East, two hundred eighty rods (280) rods to a point on other land of, or formerly of, Joseph Johnston and Sarah Johnston; thence along the same, South 78° East fifty-nine (59) rods, to a stone; thence South 46½° West two hundred seventy-four (274) rods to a stone; thence North 78° West, fifty-nine (59) rods, to the place of beginning, containing one hundred two (102) acres, strict measure". There was excepted and reserved a tract of approximately 8 acres not here material.

The description of the Larkins tract in the answer is as follows: "BEGINNING at a chestnut stump corner of lands now or formerly of William Sutton and St. Clair Forest; thence North 40° West 2415 feet to a chestnut stump corner of lands now or formerly of Alex Himler; thence North 50° East 4405 feet to stones; thence continuing along land now or formerly of Alex Himler, North 40° West 1347 feet to post; thence along lands now or formerly of Robert Anderson and now or formerly of Charles Frisk, North 47° East 3825 feet to a

post; thence continuing along land now or formerly of Charles Frisk, North 43° West 800 feet to a post; thence along land now or formerly of—Ross, North 51° East 2105 feet to a gum tree; thence along land now or formerly of John Curry, South 3° East 6998 feet to stones; thence along lands now or formerly of Nils Skroder, North 69° West 1459 feet to a hickory; thence along lands now or formerly of Victor Nordstrom, South 47° West 4606 feet to a post; thence along lands of Sutton aforesaid, North 75° West 297 feet to stones; thence South 15° West 726 feet to a chestnut stump, the place of beginning. Containing 590.236 acres as per survey of D. R. Walkinshaw, Civil Engineer, dated April 1, 1915". There was excepted and reserved a tract of approximately 31 acres not here material.

The dispute concerns the location on the ground of the northern and eastern boundary lines of the Will property, along which boundary lines the Will property adjoins the Larkins property. Joseph Johnston was the common source of title to both tracts. The first deed from this common source was one to Ludwig Nordstrom, dated January 14, 1888, and covering the tract of 102 acres described in the complaint. Nordstrom conveyed this tract to Mrs. Will by deed dated November 6, 1934, excepting the parcel of approximately 8 acres not here material. By a subsequent conveyance the tract was conveyed to Mrs. Will and her husband, and finally, by deed dated December 27, 1951, it was conveyed back into the name of Gretta Will alone. The description in all these deeds remains the same.

On April 1, 1915, the remaining portion of the Joseph Johnston tract was surveyed by D. R. Walkinshaw, and a draft was made of the survey showing the courses and distances, giving the monuments and stating the area to be 590.236 acres. Joseph Johnston died

testate on February 1, 1919, and devised all his real estate to his daughter, Eliza Jane Johnston. On May 14, 1947, she conveyed the tract to W. Howard Larkins, excepting the parcel of approximately 31 acres not here material. This deed described the property according to the Walkinshaw survey.

At the trial, Mrs. Will produced a draft made by Walkinshaw, who had gone on the ground in 1954 and surveyed according to the monuments which he had located in 1915. Walkinshaw was an engineer of fifty-three years experience and was thoroughly familiar with the general locality. He located the hickory corner mentioned in the Larkins description, being the northeast corner of the Will tract. He also located a stone monument at the southeast corner of the Will tract, and found a post and wire fence at this point, separating the Will tract from lands formerly of Nils Schroder immediately adjoining it on the south. At the southwest corner no monument or other mark could be found. Using the monuments on the ground, and correcting the bearings to allow for the shifting of the magnetic pole, Walkinshaw found the northern boundary of the Will tract to run a course north 49° east, and the distance between the monuments to be 4606 feet. The remaining disputed boundary, that on the east, had a course south 67° east, and the distance between the two monuments measured 1232 feet. As surveyed by Walkinshaw in 1954, the lines of the Will tract in controversy coincided with the corresponding lines of the Larkins tract as originally surveyed by him in 1915. He fixed the area at 97¾ acres, which closely approximates the net quantity called for in the Will deed.

The defendants introduced the testimony of two surveyors. Burgess Ross made a survey of the entire Larkins tract in 1951, and ran the easterly line of the

Will tract in 1953. Drafts of these surveys were introduced in evidence, as well as a composite of various surveys made by Ross showing several tracts joining the Larkins property on the east. It is noteworthy that the Ross draft of the entire Larkins tract differs materially from the original Walkinshaw survey made for Johnston and subsequently used as the description in the deed to Larkins. In particular, insofar as we are here concerned, Ross failed to find the hickory corner which marked the intersection of the two disputed lines. The other surveyor, George Gera, had made a survey of the Will tract in June 1953. This survey does not follow the courses of the Will deed, the original draft of Walkinshaw, nor the subsequent survey of Ross. Moreover, the draft introduced in evidence shows no monuments at the corners, and there apparently was no attempt to tie the survey in to any existing monuments other than fence lines on the south and east, which are not in dispute. Finally, the Gera survey shows a total area of 84.389 acres or, allowing for the parcel excepted from the Will deed, a net area of only 76.308 acres.

Appellant's present counsel states the principal question involved as follows: "1. In an action of ejectment to determine a boundary dispute where plaintiff in her complaint set forth the description as it appeared in her deed and made no allegation that such description was erroneous, did the evidence support a verdict which rewrote plaintiff's deed by increasing the length of her side boundary lines by 269 feet". His position is that Walkinshaw disregarded the Will deed completely, and that there was no competent evidence to sustain the jury's verdict.

In determining the correct boundaries of land, courses and distances must give way to monuments on the ground, and parol evidence is admissible to estab-

lish the existence of such monuments: *New York State Natural Gas Corp. v. Roeder,* 384 Pa. 198, 120 A. 2d 170. See also *Ross v. Golden,* 344 Pa. 487, 25 A. 2d 700; *Hutchison v. Little Four Oil & Gas Co.,* 275 Pa. 380, 119 A. 534. Where there is a clash of boundaries in two conveyances from the same grantor, the title of the grantee in the conveyance first executed is superior. See *Thompson v. Kauffelt,* 110 Pa. 209, 1 A. 267; *Detwiler v. Coldren,* 101 Pa. Superior Ct. 189. It is only when there are neither monuments nor calls for adjoiners that courses and distances govern: *Green v. Schrack,* 16 Pa. Superior Ct. 26. And see *Post v. Wilkes-Barre Connecting R. R. Co.,* 286 Pa. 273. The method of locating lines by courses and distances may result in manifest error, and when it does this method should not be employed: *Deppen v. Bogar,* 7 Pa. Superior Ct. 434. We had occasion in the recent case of *Merlino v. Eannotti,* 177 Pa. Superior Ct. 307, 110 A. 2d 783, to restate many of the applicable principles.

It is significant that, in 1915, while the original owner (Johnston) was still living, a survey was made clearly defining the two lines now in dispute. The draft of this survey is entitled to great weight in the present controversy: *Huffman and Foreman v. McCrea,* 56 Pa. 95; *Hostetter v. Commonwealth,* 367 Pa. 603, 80 A. 2d 719. Furthermore, the surveyor (Walkinshaw) who made the survey in 1915 was still living and appeared as a witness. The testimony of practical surveyors of large experience, especially those acquainted with the original monuments, is extremely valuable in establishing the location of boundary lines: *Northumberland Coal Co. v. Clement,* 95 Pa. 126; *Jackson v. Lambert,* 121 Pa. 182, 15 A. 502. This evidence on behalf of appellee clearly established the hickory corner of the Johnston tract, now the intersection of the two disputed lines. Having located this hickory cor-

ner, Walkinshaw extended his eastern line, using a course corrected for magnetic deviation, until he reached the corner of the Will and Schroder tracts. This point, marked by stones and by a fence line, constituted a monument which was superior to the distance called for in the deed. Similarly, as to the northern boundary, Walkinshaw ran the line from the hickory corner to a post, an actual measured distance of 4606 feet.

Appellant particularly stresses the Gera survey. Since the western and southern boundaries were defined by fence lines, Gera ran his survey from these two lines, using the distances stated in appellee's deed, regardless of the possibility of monuments marking the other corners. In other words, he forced a survey based on the courses and distances in the deed, disregarding monuments which apparently were on the ground to be found. He wound up by reducing the purported area from 94 acres to 76 acres. Appellant argues that the stones given as the monument at the end of the second line could not be found. While Gera failed to find this corner, Walkinshaw did find the stones in question, and the uncontradicted evidence shows that this point was further marked by the fence separating the Will and Schroder properties.

It is unnecessary to discuss the remaining arguments on appellant's behalf.[1] They merely set forth general principles to which reference has already been made. The question of what are boundaries is a matter of law for the court, but where those boundaries are is a question of fact for the jury: *Miles Land Co.*

---

[1] "2. Where monuments are doubtful, resort will be had to courses and distances. 3. Courses and distances control the lines of a survey in the absence of calls for natural or artificial monuments or lines, or in case the monuments cannot be found. 4. A call for quantity will yield to courses and distances".

*v. Hudson Coal Co.*, 246 Pa. 11, 91 A. 1061. See also *Culver v. Hazlett*, 13 Pa. Superior Ct. 323; *Lenihan v. Davis*, 152 Pa. Superior Ct. 47, 31 A. 2d 434. Where expert witnesses differ as to the proper method of locating a boundary line the case is for the jury: *Thompson v. DeLong*, 71 Pa. Superior Ct. 282. See also *Reilly v. Crown Petroleum Co.*, 212 Pa. 325, 61 A. 915. In the case at bar the trial judge submitted the controlling issues to the jury in a thorough and complete charge concerning which no complaint is made. We agree with the court en banc that the verdict should not be disturbed.

Judgment affirmed.