Walleigh et ux., Appellants, *v.* Emery.

Argued June 14, 1960.   Before RHODES, P. J., GUN-
THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-
GOMERY, JJ.

■■■■■■■■■■■■■■■■■■■■

*Dallett Hemphill,* for appellants.

*D. Clarke Sautter,* for appellees.

OPINION BY ERVIN, J., September 16, 1960:

This is an appeal from a final decree in equity in which judgment was entered in favor of the defendants.

The plaintiffs and defendants were owners of adjoining tracts of land situate in East Pikeland Township, Chester County. The problem involved is the establishment of the eastern boundary of the plaintiffs' land and western boundary of the defendants' land. The plaintiffs seek to require defendants to remove a cement block retaining wall and driveway erected on land alleged to belong to the plaintiffs and they ask for damages for the removal of a hedge, trees, shrubs, plants, three concrete steps and part of a concrete walk also alleged to have been on plaintiffs' property.

Howard K. Moses was the owner of a large tract out of which both plaintiffs' and defendants' lands have come by many conveyances. All deeds in both lines of title contain descriptions based upon a survey of G. G. Mudehardt dated September 17, 1915, which survey was placed in evidence by the plaintiffs.

On December 9, 1915 Moses conveyed to Hires Condensed Milk Company the following described property: "BEGINNING at an iron pin in the center of the public road leading from Kimberton to Phoenixville, thence north eighty-one degrees thirty minutes east along the center of said public road 274.5 feet to a point; thence south *by and along a private driveway* six degrees east 175.5 feet to a point in lands now or late of Howard K. Moses; thence along said lands south eighty-three degrees thirty minutes west, 70.7 feet to a point; thence still along said lands south nine degrees thirty minutes east, 82.2 feet to a point in the line of land now or late

of Chester Pennypacker; thence along said land north forty-six degrees west 323 feet to the place of beginning." (Emphasis supplied)

By the same deed, Moses also granted to Hires and its successors and assigns "free and uninterrupted right of ingress, egress and regress over, in and along the private driveway of the grantor which adjoins the property herein conveyed on the easterly side thereof . . . the said private driveway shall be kept open for travel and in good repair forever, by said grantors, their heirs and assigns."

The survey of Mudehart disclosed the width of the aforementioned driveway to be 36 feet.

On January 15, 1930, Nestle's Food Company, Inc., formerly Hires Condensed Milk Company, conveyed the aforesaid property to A. C. Roberts, using the same description. On September 26, 1931 Roberts conveyed the following described property to Russell Paul Opperman, et ux: "BEGINNING at an iron pin in the center of a public road leading from Kimberton to Phoenixville, thence north eighty-one degrees thirty minutes east, along the center of said public road, 28 feet to a point; thence south *by and along a private driveway* six degrees east, 175.5 feet to a point in line of lands now or formerly of Howard K. Moses; thence along said lands south eighty-three degrees, thirty minutes west, 28 feet to a point; thence by lands about to be conveyed to York Glen (correctly Glenn York), and *through the middle of a partition wall of a dwelling erected on said lands,* north six degrees west, 175.5 feet to the center of said public road and place of beginning." (Emphasis supplied), together with the rights in the aforesaid 36 feet wide private driveway.

On April 23, 1936 the plaintiffs became the owners of the above tract and also a second tract, being a 140.4-foot front property which was located at the

westernmost part of the premises conveyed in the afore-mentioned deed from Moses to Hires Condensed Milk Company.

As to the defendants' title, on March 5, 1917 Moses conveyed to Howard G. Darlington, in accordance with the survey of Mudehardt, the premises described as follows: "BEGINNING at a stake in the center of the Pickering Valley Railroad; thence along same south no degrees thirty minutes west, 434 feet 5 inches to a point in said Pickering Valley Railroad and on lands of Chester Pennypacker; thence along said lands of Chester Pennypacker north forty-six degrees no minutes west, 218 feet 8 inches to a point in line of lands of Chester Pennypacker and lands of Hires Condensed Milk Company; thence along lands of said Hires Condensed Milk Company the three following courses and distances, north nine degrees thirty minutes west, 82 feet 2 inches, north eighty-three degrees thirty minutes east, 70 feet 7 inches, north six degrees no minutes west 175 feet 5 inches to a point in the center of the public road leading from Kimberton to Phoenixville; thence along the center of said public road north eighty-three degrees thirty minutes east, 121 feet 5 inches to the place of beginning." This conveyance was "subject, nevertheless, to the right of the Hires Condensed Milk Company to use the private driveway as reserved in the deed of Howard K. Moses to the Hires Condensed Milk Company. . . ."

By deeds using the same description, on March 3, 1919 Darlington conveyed to Montgomery and on April 25, 1945 Montgomery conveyed the same to the defendants.

The plaintiffs introduced the testimony of a surveyor, T. G. Colesworthy, who discovered that the deed from Moses to Hires did not close; therefore, he forced a closure by changing four out of five bearings. By

using that method, the westerly line of the plaintiffs' property did not pass through the middle of a partition wall as called for in his own deed but passed through his house a considerable distance to the east of the partition wall. On the other hand, the defendants' surveyor, Earl R. Ewing, after discovering that the deed into the defendants did not close. ascertained where the center line partition wall was, measured 28 feet to the east of the center of the wall and established a line 28 feet from and parallel to the center line of the partition wall. By measuring 175.5 feet south along the said parallel line from the center of Kimberton-Phoenixville Road, the defendants' surveyor discovered an iron pin. He then measured in a westwardly direction 70.7 feet, in accordance with defendants' deed as well as plaintiffs' deed, and discovered another iron pin. Plaintiffs' surveyor ignored the party wall, and the two iron pins as monuments on the ground, and used as an easterly boundary of plaintiffs' land a line, the beginning of which was a point in the center of Kimberton-Phoenixville Road 121.5 feet west of the center of the main track of the Pickering Valley Railroad. By using that method, part of the plaintiffs' own house would not be on their land but on the land of their neighbors to the west.

Furthermore, by deed of July 5, 1956, Frank H. Detwiler, Jr. et ux., conveyed to Leonard R. Walton et ux., two tracts of land out of what was originally conveyed by Nestle's to Roberts, both lying between the two tracts owned by plaintiffs and having respective frontages along the center line of the Kimberton-Phoenixville Road of 68.1 feet and 38 feet. The 38-foot front tract adjoins plaintiffs on the west and its description places its eastern boundary as a line running through the middle of a partition wall of a dwelling thereon, which is the westerly half of a twin house,

the easterly half of which stands upon plaintiffs' Tract
No. 1. The aggregate frontage of the four adjoining
tracts of plaintiffs and Waltons totals 274.5 feet along
the center line of the Kimberton-Phoenixville Road and
coincides exactly with the Mudehardt survey and plan
of 1915, as well as the north boundary of the larger
premises conveyed by Moses et ux., to Hires and there-
after to Roberts. The west end of that frontage an-
chors on the iron pin established by the Mudehardt sur-
vey and recited as the point of beginning of Tract No.
2 in plaintiffs' deed of April 23, 1936, the source of
their title to both tracts.

Courses and distances in a deed must give way to
monuments on the ground: *Merlino v. Bannotti,* 177 Pa.
Superior Ct. 307, 110 A. 2d 783.

Parol evidence is admissible to establish the exist-
ence of monuments: *New York State Natural Gas Corp.
v. Roeder,* 384 Pa. 198, 120 A. 2d 170. Boundaries may
be established by circumstantial as well as direct evi-
dence: *Hostetter v. Com.,* 367 Pa. 603, 80 A. 2d 719;
*Guerra v. Galatic,* 185 Pa. Superior Ct. 385, 137 A. 2d
866.

Where the location of the beginning corner of a sur-
vey is doubtful, the lines of the survey may be deter-
mined by commencing at some other natural or arti-
ficial object called for and identified: 11 C.J.S., Bound-
aries, §12.

The question of what is a boundary line is a matter
of law, but the question of where a boundary line, or a
corner, is actually located is a question of fact: *Guerra
v. Galatic,* supra.

Howard K. Moses was the common grantor of the
larger tract out of which plaintiffs' lands by mesne con-
veyances have come, and out of which defendants' have
likewise come. All deeds in both lines of title contain
descriptions based upon Mudehardt's original survey

and plan of 1915 used in Moses' conveyances. Plaintiffs plead their title based upon the same deed calls for Tract No. 1 as are derived from Mudehardt's survey and which have been used in successive deeds following Roberts' conveyance of September 26, 1931 to Opperman et ux., plaintiffs' predecessors in title to Tract No. 1, and his conveyance of October 1, 1931 to York et ux., of the tract adjoining it on the west. Both of those deeds are based upon a common boundary of the middle of the partition wall of the twin houses in existence before the Opperman deed. That line is an artificial monument on the ground and prevails over all measurements: *Medara v. DuBois,* 187 Pa. 431, 41 A. 322.

On the basis of that monument, and only that, can plaintiffs' title lines coincide with the pin found at the southeast corner of Tract No. 1, with the pin at defendants' corner west of Tract No. 1 in Walton's line, with the adjoiners named in the calls of plaintiffs' deed, and with the west line of the private driveway. In no other way can plaintiffs' west boundary avoid cutting through their house. Nor is it otherwise possible to preserve the 36-foot wide private driveway west of defendants' building, as shown on Mudehardt's plan, nor to avoid running the south boundary of Tract No. 1 through defendants' garage.

The effect of approving the Colesworthy plan is to depart from the allegations of the complaint and the proofs as to plaintiffs' title lines, without alleging error in their deed, by cutting in half their dwelling house and taking from Waltons a substantial part of their section of the common garage, by taking from defendants a part of their garage, and by reducing the width of the driveway on defendants' land, in which plaintiffs themselves have a right of user, to a width of not over 29 feet, opposite the north end, and not over 26

feet, opposite the south end, of defendants' building, as against the 36-foot width their own evidence proves. The inconsistency and erroneous theory of their case thus becomes at once apparent.

The conveyance from Moses, as common owner, to Hires and out of which plaintiffs' title derives, was prior in time to that from Moses to Darlington, under whom defendants derive their title. Under *Will v. Piper*, 184 Pa. Superior Ct. 313, 134 A. 2d 41, plaintiffs' title is therefore superior where the boundaries clash, but superior only upon the basis of their own deed calls reconciled with the monuments on the ground and proceeding from the point of beginning established in their own deed. Thus the Colesworthy plan must yield to the monuments reconciled with the deed calls.

The Colesworthy plan is clearly erroneous. It ignores the existing monuments, makes no attempt to reconcile the deed calls with them or with adjoiners, and commences not at the point of beginning in plaintiffs' deed but at the reference pin set by Ewing in the public road. It forces a closure by changing all internal angles and the lengths of two sides of plaintiffs' Tract No. 1 and by setting a new pin for its southeast corner in spite of having found a pin near that point, north and east of the new pin set.

We feel that the findings of fact and conclusions of law arrived at by the court below were correct under the evidence and the law.

Judgment affirmed.