## Sugarloaf Township Appeal.

Argued September 14, 1966. Before WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (ERVIN, P. J., absent).

*Conrad A. Falvello,* for appellant.

*Richard I. Bernstein,* with him *Falvello, Ustynoski, Giuliani & Bernstein,* for appellee.

OPINION BY MONTGOMERY, J., November 17, 1966:

A dispute having arisen between the Borough of Conyngham and Sugarloaf Township, both in Luzerne County, as to the easterly boundary line of said borough, the Court of Quarter Sessions of that county, on petition, appointed a Commission "to ascertain and establish" said line. Subsequently it was also directed to make recommendations as to an alleged error in the southerly line description as set forth on the map attached to the original petition for the incorporation of said borough. This action was taken under the Act of

July 10, 1947, P. L. 1621, §7, amending §502 of The Borough Code, Act of May 4, 1927, P. L. 519, 53 P.S. §45502. Under this provision the court has the power to (a) alter the lines of a borough and any adjoining township, borough or city to suit the convenience of the inhabitants thereof, (b) to cause the lines and boundaries of boroughs to be ascertained and established, and (c) to ascertain and establish disputed boundaries between two or more boroughs, between boroughs and cities, or between boroughs and townships. No questions as to procedure or the general right of the court to entertain this petition is raised in this appeal. The only issue is the sufficiency of the evidence to support the report of the Commission, which was accepted and approved by the court.

After hearing, view of the boundaries on the ground, and examination of records, the Commission, one member of which was a registered surveyor and the other two members of the Luzerne County Bar, made its report in which it recommended corrections in the description of the northerly line from N. 54° W. to S. 54° W., and of the southerly line from S. 80° E. as written, to N. 80° E., as plotted. The Commission also recommended that the easterly and westerly lines remain the same as written and plotted, and it adopted the original plot with the suggested corrections as correctly establishing the lines of the borough.

By utilizing the bearings as actually drafted on the incorporation plot the description closed without difficulty. Utilizing the bearings as written thereon a distortion arose which resulted in an outline of an area that did not close, the terminal of the final bearing being far removed from the beginning point. It appeared to the Commission that the original surveyor by inadvertence had made an error in transposing two letters in the bearings, not an uncommon error, and that their transpositions were the cause of the dispute.

The conclusion reached by the Commission is supported by the testimony of Mr. John X. J. Callahan, a registered engineer and surveyor who was retained by the Borough of Conyngham to make a survey of the southeasterly corner and southern boundary of said borough. Mr. Callahan made a paper and field survey of said area in 1962. His report was based on studies made of old records, including an original log and field notebook of the original surveyor, Mr. Jacob H. Bliem, compiled when he made a resurvey of the borough in 1902 for the purpose of laying out streets, from minutes of the borough council, from the location of streets which had been in use for over 60 years, and from adjoining properties, including buildings, all of which he reconciled. Further, a witness, Mr. Abner Minnich, age 73, identified a stone marker on Main Street with which he had been familiar for 60 years, which had been considered as indicating a boundary line. This stone also marked a point which was consistent with the Commission's findings.

Although the township did not offer any evidence or a conflicting survey to refute that of Mr. Callahan, it now argues that the Commission's report should not have been accepted by the court because the beginning point marker described as "a STONE PLANTED FOR A CORNER ON THE LAND OF W. A. ROTH" in the original petition for incorporation had not been located. It also asserts that it was error to admit the testimony of Mr. Callahan since his survey was based largely on the resurvey of 1902 and not the notes of the original survey made prior to 1901 in preparation for the petition for incorporation. Thirdly, it argues that without reference to landmarks or monuments, or to a genuine, undisputed starting point, and without a resurvey of the borough boundaries, it was error to accept the Commission's description of the borough and to order the borough to mark the said boundaries without designating the places where the markers should be located.

The effect of the lower court's order is solely to correct the description of the Borough of Conyngham to correspond to the plot of same which was attached to the petition for its incorporation and to correct the apparent errors in the bearings to correspond with that plot. Although it further directed the borough to "appropriately mark the said boundaries", it did not undertake to resolve any disputes as to the exact location on the ground where the boundaries should be marked. If the borough fails to place markers at the places indicated by the corrected plot this may lead to further disputes and more litigation. However, this is not properly before us for consideration at this time.

We find no merit in the township's other arguments. Although the original monument referred to in the description of the borough, as contained in its petition for incorporation, could not be found after an extensive search, the effect of such failure was only to justify the use of other monuments to establish the boundaries. This subject was thoroughly reviewed by this Court in *Baker v. Roslyn Swim Club,* 206 Pa. Superior Ct. 192, 197, 213 A. 2d 145, 148 (1965) ; and *Walleigh v. Emery,* 193 Pa. Superior Ct. 53, 163 A. 2d 665 (1960), in learned opinions written by our President Judge ERVIN. In the former case we said: " 'Where the location of the beginning corner of a survey is doubtful, the lines of the survey may be determined by commencing at some other natural or artificial object called for and identified: 11 C.J.S., Boundaries, §12. . . .' ", and " 'Where the calls for the location of boundaries to land are inconsistent, *other things being equal,* resort is to be had first to natural objects or landmarks, next to artificial monuments, then to adjacent boundaries (which are considered a sort of monument), and thereafter to courses and distances.' . . . 'Where, however, it is apparent that a mistake exists with respect to the calls, an inferior means of location may

control a higher one. In the last analysis the call adopted as the controlling one should be that most consistent with the apparent intent of the grantor. . . . Accordingly, courses and distances will prevail over monuments where absurd consequences might ensue by giving controlling influence to a call for the latter, or where, in any given case, a consideration of all the facts and circumstances shows a call for distance to be the more reliable or certain, or where the call for the monument was inserted by mistake or inadvertence.' "

We are of the firm opinion that in this case these rules were properly followed. Although the monument at the beginning point could not be located, there were other factors which were established or unquestioned. The westerly boundary line was not in dispute, the streets were well established and recognized, and Mr. Minnich's stone was found and identified. After considering all of these factors and reconciling them the Commission was well justified in finding that this dispute was due entirely to the transposition of two letters in the two bearings previously mentioned.

There is sufficient evidence to support the findings and conclusions of the Commission, which were accepted by the lower court. Although the notes of the original survey would be very helpful, we know of no law which compels their production. If they were available the township had ample opportunity to subpoena them as evidence. However, since the 1902 log book was compiled by the same surveyor, it would appear to us that in the absence of evidence to the contrary, the notes therein were properly considered as reaffirming the original notes or as continuing and adding to them.

Order affirmed.