SUPERIOR TAILORING CO.,
    APPELLANT,

        vs.                    No. 7427.

CHAS. W. LEWIS.            7427

April 17, 1919.

CHARLES F. CLAIBORNE, JUDGE.

The plaintiff is a business firm domiciled in Cincinnatti.

This suit was filed on December 21st, 1917.

They sue upon the following note:

"$2252.00.                    Cincinnatti, Ohio, January 4, 1916.

One year after date, I promise to pay to the order of the Superior T'l'g. Co., twenty-two hundred and fifty-two dollars at value received.

                    "Signed"   Chas. W. Lewis".

Upon the back of this note are the following indorsements written in pencil:

Cr. Cash.

| 1916 - Jany. 29, | $50 |
| February 13, | $50 |
| April 11, | $50 |
| May 3, | $50 |
| - 29, | $50 |
| June 19, | $50 |
| Aug. | $50 |
| id 29, | $50 |
| Oct. 11, | $50 |
| Nov. 2, | $50 |
| Dec. | $50 |
| id 19, | $50 |
| 1917 - Febry. 8, | $100 |
| Mch. id, | $100 |
| Apr. id, | $100 |
| May id, | $100 |
| total | $1000. |

Petitioner avers that the above amounts have been paid

on account of said note, "leaving a balance due and owing on said note of one thousand, two hundred and fifty-two dollars"; and it prays for judgment for said amount with legal interest from January 4th, 1916 (date of said note) until paid.

The defendant resides in New Orleans. He denied that he was indebted to plaintiff in any sum whatever, but averred that, on the contrary, the plaintiff owed him a large sum of money; he admits that the sum of $1000 has been paid on account of said note in the various credits shown on the back of said note, and avers that the said credits are only a part of those to which said note is entitled, and that the balance of said note has been fully liquidated in the following manner:

That during the year 1915, the defendant was employed by the plaintiff as a traveling salesman handling a line known as "Tailor to the Trade" under a written contract; that at the termination of the year on January 4th, 1916, he had received from the plaintiff in excess of his commissions earned in handling the above line the sum of $2252.00; that on January 4th, 1916, he made a new contract in writing with the plaintiff for the year 1916 to handle the same class of goods; and for the purpose of liquidating the above overdraft for the year 1915 in that particular line, and not to liquidate any other account between plaintiff and defendant, as it was well understood and agreed, he signed the above note;

Defendant further avers that during the years 1915 and 1916 "he insisted upon plaintiff accounting to him for certain commissions due him by the plaintiff upon business and sales made by him or through him for the said plaintiff upon a special side line known as "Cut, Trim, and Make" work at the rate of 3% commission upon all orders obtained by or through him during the years 1915 and 1916"; that the said commissions amount to a sum greatly in excess of the face value of the note sued on, and that the plaintiff has failed to render defendant any accounting; that an accounting should be made, and defendant's commissions thereon should be credited to the note to an amount sufficient to extinguish the note, and that he should have a judgment against the plaintiff for any amount exceeding the note; that his

175

commissions for all orders for "Cut, Trim, and Make" work were in accordance with a written offer made to defendant on October 23d, 1914, and accepted by him; that his contracts for the years 1915 and 1916 concerning the "Tailor to the Trade" line, were in no manner concerned with the side line of the "Cut, Trim, and Make" work; that the credits upon the back of said note aggregating one thousand dollars were deductions made by the plaintiff from defendant's salary, - and that no credit for commissions of 3% due defendant upon the side line appear upon said note. Defendant prays for an accounting of the"Cut, Trim, and Make" 'business"; that the note be declared paid, and for judgment in his favor against the plaintiffs for whatever amount the plaintiffs may appear to owe him by said accounting.

There was judgment in favor of plaintiffs and against defendant for $13.44; and in favor of the defendant Lewis, on his reconventional demand, against the Superior Tailoring Company for $1238.56,"which amount is to be credited on the promissory note herein sued on, and that on payment of the sum of $13.44 interest and costs by the defendant in suit and plaintiff in reconvention to the plaintiff in suit and defendant in reconvention, the said promissory note herein sued on be cancelled and annulled".

In other words the District Judge found that the defendant was entitled to commissions on the "Cut, Trim, and Make" business to the amount of $1238.56; and while the plaintiffs' claim was for $1252.00, balance due upon the note, he reduced the claim by $1238.56, rendering judgment in favor of plaintiff practically for only the difference between $1252.00 and $1238.56 or $13.44.

From this judgment the plaintiff has appealed.

The defendant, in this Court, has prayed for damages for a frivolous appeal and for an amendment of the judgment in his favor increasing it from $1238.56 to $1270.90.

The evidence is that the defendant was hired in 1914 as traveling salesman to represtnt the plaintiffs in Louisiana and Mississippi to handle their line of "Tailor to the Trade" business; what the conditions of the contract were in that year is not shown, although the contract was in writing; his employ-

ment was continued during the year 1915; his contract for that year is not in evidence either.

On October 23d, 1914, the defendant received a letter from the plaintiffs couched in the following terms:

"Owing to the increased demands among a certain class of trade for the cut, trim, and make proposition, I have about decided to put in a department of this kind, and would like to know what you think of this idea. x x x I am figuring on only allowing two or three of our men to place these lines, and in return for this extra service, will allow them 3% on all the business that they get. This will be clear profit and extra money for them, as I don't expect them to go out of their way to obtain this extra business, aw there are a great many accounts in the larger towns where a cut, trim, and make propostition could be handled even though a tailoring line is in the town. It will have to be worked entirely separate, as one proposition will be hurting the other" &c."

On October 28th, 1914 the plaintiffs again wrote to the defendant:

"I am in receipt of yours of the 26th, and am glad to learn that you like our idea regarding the cut, trim and make proposition. Since writing you we have developed our plans and are getting up the necessary stationery and price lists which we hope will be ready by the 15th. of next month. x x x As regards our next season's arrangements with you, both Mr. Mueller and I thought it was understood that we were to continue our present arrangement until the first of the year, when you are expected here to go over matters more fully. You informed us that this plan was satisfactory to you, and we feel that there will be no hitch in anything &c &c".

The plaintiff testified that he obtained cut, trim, and make business in accordance with the terms of those letters; but he does not state what commissions, if any, he received. He continued to be employed by the plaintiffs during 1915, but under

177

what conditions is not shown.

On January 4th, 1916, he signed a contract with the plaintiffs in the following terms:

1o "The party of the first part (the Superior Tailoring Co.) employs the party of the second part (Charles W. Lewis) as traveling salesman and representative for a period of one year from date".

2o "The party of the second part agrees to devote his entire time and attention exclusively to the business of the party of the first part and to travel and solicit business in the States of Louisiana and Mississippi and in such other territory as the party of the first part may designate".

3o "The party of the first part agrees to pay the party of the second part the sum of $3000.00 in equal monthly payments at the end of each month, and in addition the sum of $35 per week for traveling expenses while on the road in the interests of the party of the first part".

4o "The party of the first part agrees to base the sales of the party of the second part on 8% and should the amount advanced him for salary and expenses be less than 8% of his net sales, the party of the first part agrees to pay him this difference at the expiration of this contract".

Nothing is said of extra commission of 3% on cut, trim, and make business.

On the same day that this contract was signed, the defendant signed the note sued on herein. In his own words:

"In the year 1915 under my contract as a representative for the tailor to the trade the commissions that they offered me in my contract did not cover the amount of money they had advanced me to get business and salary. In other words, I was overdrawn".

His testimony continues:

"By the Court: How much was due on that cut, trim, and make business at the time? A. About seven or $800,

178

and in order to keep on with the firm, I told them at the time I have that coming to me and it is mine, and he said according to your contract it is not".

Concerning those commissions for the year 1915, defendant, on March 30th, 1915 writes to A. H. Woolf, sales-manager for the plaintiffs:

"Now regarding extras you must remember I relinguished my commission of 3% on G. and L's. (Gundermann and Lewis) business just so we can give them the best of everything and also cut out the extras, in order to compete with the other houses. I done all this so that you could get the business, as I want you to have it and won't be so short as to take 3% when it would interfere with you giving them the best, and cutting out the extra charges"

Charles W. Lewis was a member of the firm of Gundermann and Lewis, tailors in New Orleans.

On January 1st, 1917, the defendant signed another written contract for that year. The first and second clauses are the same as in the contract for 1916. The third clause reads as follows:

"The party of the first part agrees to pay the party of the second part $2100 in equal monthly installments of $175.00 at the end of each month".

Although the defendant had received no commissions on the cut, trim and make business for the years 1915 and 1916, the contract was again silent on the subject.

But the relation between the plaintiffs and defendant became strained soon after. The defendant complained that the plaintiffs were asking than too much for their goods, and demanded a reduction.

On March 10th, 1917, the plaintiffs wrote to the defendant, among other things:

"You now come along and ask us to cut prices, something we can't do and will not do; the second important feature you overlook is as follows: When we made this year's contract with you, the agreement to pay you $2700.00 was

based upon our agreeing to take into consideration $20000:00 of Gundermann and Lewis' business which you assured us and for which you were to receive a commission of 3%, this percentage on the amount of business mentioned would amount to $600.00 and without this business you know well enough that we would not have consented to pay you any more than $2100.00. You did not want, as you recall, this commission item mentioned in your contract because you did not want Gundermann to know anything about it, but the agreement covering this 3% was made in the presence of several witnesses".

On March 15th, 1917, the plaintiffs again write to the defendant:

"Now as to the question of your contract, the facts as outlined in our letter of March 10th. are absolutely true and you know such to be the case. You turned down an offer made to you by Mr. Arthur Wyler for considerably less money than what your contract calls for, and that offer was made taking into consideration the Gundermann and Lewis business; after you turned down the offer you must admit that it was agreed as a result of your positive statement assuring us of $20,000.00 G. and L. business during 1917 to figure that amount of business on a basis of 3% which would make $600.00 to which you stated you were entitled and which you had never previously received. With your guarantee of this much business, we consented to include this $600.00 in the amount of $2700.00 which we agreed to pay you; this agreement as to the $600.00 was not included in the wording of your contract, solely because you objected to it, stating that this was a matter solely between you and us and you didn't want Gundermann to know anything about it".

Nothing in defendant's answers to these letters denies this side agreement, nor the statement that he "had never previously received" 3% commission.

But the differences between the plaintiffs and the defendant pulled them apart until May 4th, 1917 when, defendant

180

resigned his position with the plaintiffs and, by mutual consent, their contract was cancelled.

On May 17th, 1917, the plaintiffs wrote to the defendants;

"Enclosed find statement showing balance due us on your note amounting to $1252.00. Inasmuch as you are no longer with us, we beg to ask what sort of arrangements you wish to make to liquidate this indebtedness".

On May 18th, 1917, the defendant wrote to the plaintiffs:

"Now as to the 1252 dollars you billed me for the note I beg to advise that I am due the 3 per cent on G. and L. business of 1915 which amounted to over $20,000 and deducting that as Mr. Woolf always told you was due me I only owe you 1252 less 600 leaving $652. Send me a bill for this amount and I will make arrangements to pay same at once. This is what I am going to pay, so if you want to settle that way advise me at once".

On June 4th, 1917, the defendant again wrote to the plaintiffs:

"Yours to hand. Now I can prove that G. and L. paid extra for special work, and everything they got and as to the matter it never was settled so if you want to settle the matter I will send you a check for the difference less the $600 that I claim is due me and which I can prove was coming to me if you don't want to settle that way do just as you please and I can prove all I claim. x x I think you are acting very short in the matter and I have plainly stated my case now do as you want I will not honor any draft as I am willing to pay what is due you without drafts".

Nothing in this correspondence intimates any claim for extra commissions on the cut, trim, and make business, claimed in this case. The defendant actually mailed a check for $652 to the plaintiffs who refused it. This suit was filed December 21st, 1917.

We are of opinion that the defendant has failed to make a case against the plaintiffs in the face of their denial. We think, on the contrary, that the plaintiffs have successfully

181

established the absence of all claims of the defendant against them for the following reasons:

1o    It is not shown that the contract of 1915 with the defendant entitled him to any commission on the cut, trim, and make business, and the contracts of 1916 and 1917 are silent upon the subject. The law presumes that parties have embodied all their agreements into their contracts and very wisely prohibits parole testimony "against or beyond what is contained in the acts or on what may have been said before, or at the time of making them or since.

2o    The silence of the defendant concerning these commissions during the whole of the years 1915 - 1916 - and 1917, and their assertion only in the answer to this suit:

3o    The fact that although the defendant claimed commissions for the years 1915 and 1916, he continued to make four payments of $100 each upon his note in February, March, April and May,1917:

4o    The fact that when the plaintiffs demanded of the defendant payment of the balance of $1252 remaining unpaid upon the note, the defendant admitted his indebtedness, and claimed as an offset only $600 the commission he pretended, for the first time, he had bargained for upon the Gundermann & Lewis business for the year 1915 -, and actually mailed to the plaintiffs his check for $652 — *and the different defense he set up in this suit*

But the plaintiffs are entitled to interest only from the date the note became due.  C. C., 1938;(1932); 3 N. S., 185; 6 La., 727, 730; 2 R., 472; 6 R., 166; 1 A., 267; 3 A., 338; 19 A., 299; 104 La., 231; 109 La., 759; 127 La., 183; 8 Ct.App.396

Judgment herein is reversed and set aside; and it is now ordered that the plaintiffs, the Supreme Tailoring Co., recover judgment against the defendant, Charles W. Lewis, for the sum of one thousand, two hundred and fifty-two dollars with five per cent per annum interest from January 4th, 1917 till paid and all costs of suit.

April 17th, 1919.